THE PEOPLE *ex rel.* Daniel R. Cameron *et al.* Appellees,
    *vs.* MICHAEL J. FLYNN, City Treasurer, Appellant.

*Opinion filed October 16, 1914—Rehearing denied Dec. 8, 1914.*

1. STATUTES—*statute should be construed, if possible, to give
meaning to all its words.* A statute should be so construed, if pos-
sible, as to give effect to each word, clause and sentence, so that
no word, clause or sentence shall be rendered superfluous, but it is
also the rule that such construction should be adopted as will give
effect to the intention of the legislature.

2. MUNICIPAL CORPORATIONS—*city of Chicago has power to de-
termine the amount of city funds to be deposited.* Under the act
of 1905, relating to the city of Chicago, the city council has power
to designate as many depositary banks as it deems necessary; and
this power carries with it the authority to fix and determine the
amount to be deposited with each depositary and to prescribe all
necessary rules and regulations with respect thereto.

3. SAME—*sections 64 and 66 of the Chicago code of 1911 are
authorized by statute.* The provisions of sections 64 and 66 of
the Chicago code of 1911, relating to the designation, by the city
council, of depositary banks in which the city treasurer shall de-
posit city funds, are authorized by the act of 1905, relating to the
city of Chicago, and are not invalid, as interfering with the powers
of the city treasurer conferred by the Cities and Villages act.

4. SAME—*provision of the Chicago ordinance that comptroller
shall designate the active bank is not invalid.* The provision of
section 64 of the Chicago code of 1911 that the city comptroller
shall designate each month, as the active bank, one of the banks
selected by the city council as depositary banks, is not invalid.

5. SAME—*provisions of sections 64 and 66 of Chicago code ap-
ply to "school funds."* The provisions of sections 64 and 66 of
the Chicago code of 1911 requiring the city treasurer to deposit
city funds in depositary banks selected by the council and in the
active bank designated by the comptroller apply to "school funds"
of the city, as such funds are part of the city's funds, notwith-
standing section 137 of the School law requires the city treasurer
to hold school moneys as a special fund.

APPEAL from the Superior Court of Cook county; the
Hon. CLARENCE N. GOODWIN, Judge, presiding.

This was a petition for *mandamus* in the superior court of Cook county, in the name of the People of the State of Illinois, on the relation of sixteen of the twenty-one members of the board of education of the city of Chicago, as members of such board of education, John E. Traeger, city comptroller, and the city of Chicago, appellees, against Michael J. Flynn, city treasurer of the city of Chicago, appellant, to compel him, as such city treasurer, to deposit the school funds of the city of Chicago in certain depositaries designated by the city comptroller of the city of Chicago, in accordance with the provisions of certain ordinances of that city. A general and special demurrer to the petition was overruled, and appellant electing to abide by his demurrer, judgment was entered ordering that a writ of *mandamus* issue as prayed. Appellant prayed an appeal to the Appellate Court for the First District, and the trial court being of the opinion that the validity of a municipal ordinance of the city of Chicago was involved and that the cause was of such a character that the public interest required that the same should be passed upon by this court, entered an order that on any appeal or writ of error sued out to review the judgment the cause should be taken direct to the Supreme Court of this State, and it is by virtue of such order that the cause is brought direct to this court, pursuant to the provisions of section 118 of the Practice act.

The petition is voluminous, and as the sole question argued is the validity of certain provisions of an ordinance of the city of Chicago, it will serve no useful purpose to do more than call attention to those facts set forth in the petition which are essential to a clear understanding of the questions presented for decision.

From the allegations of the petition it appears that the city of Chicago has a population of more than 100,000 inhabitants; that its school affairs are conducted by a board

of education consisting of twenty-one members, sixteen of
whom are relators in this petition; that John E. Traeger
is the city comptroller of the city of Chicago, and appel-
lant, Michael J. Flynn, is city treasurer, whose bond as such
treasurer is fixed by the ordinances of the city of Chi-
cago at $2,000,000, although the money that comes into his
hands as treasurer very often is largely in excess of that
amount; that the city of Chicago adopted the "act relating
to city of Chicago" of May 18, 1905, (Hurd's Stat. 1913,
chap. 24, art. 12, p. 291,) and that immediately after the
adoption of that act the city council passed an ordinance
designed to render the act effective, which was subsequently
superseded by a new ordinance, (the one in question,) which
forms a part of the general code adopted later and known
as the Chicago code of 1911. All of the ordinances passed
under the powers granted by the act of 1905 are recited in
full in the petition, and show the city council undertook to
put the provisions of the act of 1905 into effect and in
every way to establish a method of procedure which would
conform to the requirements of that statute. These ordi-
nances give the comptroller supervision over the handling
of the city's funds, the payment of interest, and require
that he advertise for bids for the payment of interest on
city funds, etc., and provide for the designation· by him,
from month to month, of a so-called "active bank," where-
in the money as received from day to day is to be depos-
ited during that month, to be distributed later among the
other depositaries. These provisions are contained in sec-
tions 64 and 66 of the code of 1911 and are the two sec-
tions whose validity is attacked here. Those sections are
as follows:

"Sec. 64. Of the banks which may have been so desig-
nated by the city council as depositaries, the city comptroller
shall have power and authority to designate, from time to
time, one as the active bank or depositary for a period not
longer than one month at a time. During such period the

city treasurer shall deposit in such active bank such sums as will make the balance therein not to exceed $2,000,000, except as provided in section 26, and shall draw his checks to pay warrants drawn upon him by the mayor and city comptroller upon such active bank: *Provided, however,* that the city treasurer shall have power to withdraw the city's money from any depositary in the cases provided for and under the circumstances stated in sections 65 and 66 of this article.

"Sec. 66. There is hereby created a fund to be known as the 'equalization and transfer fund,' and for the purpose of facilitating the equalization or apportionment of the amounts of the balances on deposit with the several depositaries and the speedy transfer of money from one depositary to another in case of necessity, the mayor and comptroller are hereby authorized to draw warrants, from time to time, for such amounts as may in their judgment be necessary or advisable for the proper apportionment of the city deposits among its depositaries or for the protection of the city's interests. Such warrants shall be made payable to the city treasurer and shall be chargeable to such equalization and transfer fund, which shall in turn be credited with the respective amounts thereof deposited with one or more of the other depositaries, as the case may be."

On November 15, 1912, the comptroller advertised for bids for banks to act as city depositaries, which were duly received and submitted to the city council December 9, 1912. On December 16, 1912, the city council designated all of the banks which had submitted bids, seventy-two in number, as city depositaries. All of the banks qualified as depositaries by delivering bonds to the comptroller as required by law and by sections 26 and 27 of the ordinance of the city of Chicago. Section 26 requires the city comptroller, in advertising for bids, to give notice that the average monthly balance to be kept in any one bank shall not exceed an amount equal to one-half the capital stock, surplus

265 – 27

and undivided profits of such bank, and that no bank shall have more than $2,000,000 of city money on deposit at any one time, except during the month when it may be the active bank, when this amount may be increased if occasion demands. Section 27 provides that no award shall be effective until the depositary shall have delivered to the comptroller a bond running to the city of Chicago in an amount equal to the amount which such bank shall be designated as entitled to receive on its bid, with such sureties as the city council shall approve.

The comptroller designated Foreman Bros. Banking Company as the active bank for April, 1913, and notified the city treasurer then in office, and subsequently notified the appellant when he took the office, of such designation. Later, various of the other banks were designated in the same manner, from time to time, by the comptroller as active banks of deposit. Appellant was duly notified in each instance of such designation and his attention called to the manner in which he was depositing school funds, the same being placed to the credit of "M. J. Flynn, treasurer of school funds," instead of to the credit of the city of Chicago, as required by the ordinance. Appellant refused to recognize the authority of the comptroller in the matter of designating the active bank, or of the mayor and comptroller to require a transfer of either the city's corporate or school funds, in making deposits, and deposited both the city's corporate funds and the school funds in such of the seventy-two banks named as depositaries as he saw fit.

From the time of the adoption of the act of 1905 by the city of Chicago until September 1, 1911, the several city comptrollers and city treasurers have recognized and treated school funds as "money of the city," within the meaning of that term as used in the act of 1905. On July 9, 1913, it having come to the notice of the board of education that appellant was not observing the provi-

sions of the ordinance respecting the transferring of the school funds but was depositing such funds to the credit of "M. J. Flynn, treasurer of school funds," the board of education passed a resolution asking the city council that the bond of the city treasurer be increased, and the comptroller recommended to the council that the treasurer's bond be increased to $10,000,000. Appellant then offered to file an additional bond for $3,000,000, which offer was accepted by the city council and a resolution was adopted requiring appellant to file an additional bond for $3,000,000, which he accordingly did. On December 1, 1913, and ever since then, appellant has refused to allow the comptroller access to the books showing the deposits of the school funds and declines to give him any information in regard to the disposition of the school funds, stating that the comptroller is only concerned with the total amount of funds in appellant's hands as such treasurer, so that the comptroller has no means of ascertaining the depositaries wherein the school funds are kept or the amount in each depositary. According to the information given by the appellant there were $2,574,802.45 of such funds in his hands on December 15, 1913, of which amount the comptroller learned there was on deposit in one of the depositaries, the Fort Dearborn National Bank, a sum in excess of $2,500,000, made up of corporate and school funds. This amount is in excess of the limitation fixed by the ordinance and the bond given by such depositary of $1,000,000 and in excess of one-half its capital stock, surplus and undivided profits. Neither was it a bank designated by the comptroller as the active bank for that period, or one to which a transfer of any such amount had been authorized to be made during that period of time.

The prayer of the petition was that a writ of *mandamus* issue, directed to Michael J. Flynn, city treasurer of the city of Chicago, commanding him and his successor in office forthwith to deposit in the bank which at the time of the

issuance of the writ is the active bank or depositary of the money of the city of Chicago, all moneys which have come into and then remain in his custody as such city treasurer which were raised by taxation for school purposes or received from the State common school fund or from other sources for school purposes and commonly called "school funds," and commanding and requiring him, as such city treasurer, from the time of the issuance of the writ of *mandamus,* to daily deposit all moneys that shall be received by him as such city treasurer during banking hours, and also such moneys as he may have received on the day previous after banking hours, and which were raised by taxation for school purposes or received from the State common school fund or from other sources for school purposes and commonly called "school funds," in the bank designated or that may from time to time be designated by the relator John E. Traeger, as city comptroller, or his successor, as the active bank or depositary of the money of the city of Chicago, and to make such transfers of such school funds from one city depositary to another as may be directed by the mayor and comptroller of the city of Chicago, in transfer warrants drawn by the mayor and comptroller, in accordance with the ordinances of the city of Chicago, and for other relief, and prays for summons in *mandamus* against the defendant, Michael J. Flynn, as city treasurer of the city of Chicago, etc.

Appellant insists the two principal questions at issue are the construction and validity of the ordinances of the city of Chicago, viz.: (1) That neither section 64 nor 66 has any application to school funds but they apply only to the deposit and transfer of the corporate funds of the city of Chicago, and that if they apply to the school funds they are in contravention of section 137 of the School law and void; and (2) that sections 64 and 66 are also invalid whether they apply to the funds of the city of Chicago alone or to both the corporate and the school funds of the

city of Chicago, as they interfere with the powers of the
city treasurer conferred on him by sections 5, 6, 7, 9, 11
and 20 of article 7 and by section 5 of article 12 of the
Cities and Villages act, and are therefore void.

FYFFE & RYNER, (COLIN C. H. FYFFE, of counsel,)
for appellant.

RICHARD S. FOLSOM, ANGUS ROY SHANNON, BRYAN
Y. CRAIG, and LEON HORNSTEIN, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The office of city treasurer is created by section 1 of
article 6 of the Cities and Villages act of 1872, and his
powers and duties are fixed and prescribed by sections 5
to 12, inclusive, of article 7 of the same act.    (Hurd's
Stat. 1913, chap. 24, p. 280.)   By section 5 it is made the
duty of the treasurer to receive all moneys belonging to the
corporation and keep his books and accounts in such man-
ner as may be prescribed by ordinance, etc.   By section 6
he is required to keep separate accounts of each fund or
appropriation, etc.   By section 9 of the act he is made
custodian of the city's money, which is to be deposited in
such depositaries as the city council may select and desig-
nate.   That section reads as follows:

"Sec. 9.  The treasurer may be required to keep all
moneys in his hands belonging to the corporation, in such
place or places of deposit as may be designated by ordi-
nance:   *Provided, however,* no such ordinance shall be
passed by which the custody of such money shall be taken
from the treasurer and deposited elsewhere than in some
regularly organized bank, nor without a bond to be taken
from such bank, in such penal sum and with such security
as the city council or board of trustees shall direct and
approve, sufficient to save the corporation from any loss;

but such penal sum shall not be less than the estimated receipts for the current year from taxes and special assessments levied, or to be levied, by the corporation."

By a subsequent act, passed in 1905, the duties of the treasurer and comptroller and the power of the city council were more clearly defined. (Hurd's Stat. 1913, chap. 24, art. 12, p. 291.) By section 5 of part 2 of that act it is made the duty of the comptroller to advertise for bids for interest on the city's deposits and to report the bids received to the city council, whereupon the city council is to designate as many depositaries for the city's funds as it deems necessary for the protection of the city's interests and may award bids accordingly. A bond, also, is required to be taken from such depositary in such sum and with such sureties as the city council may approve, and the city council is given power to pass all ordinances necessary to carry the provisions of the act into effect and provide rules applicable thereto, and the treasurer is relieved from responsibility for all moneys deposited by him pursuant to the order or ordinance of the city council. The act further provides that in fixing the amount of the bond of the treasurer due regard shall be had of the effect of any such deposits upon the actual amount of money for which the city treasurer may from time to time be held responsible, and that when once deposited the moneys shall not be withdrawn except upon warrants drawn in accordance with the provisions of article 7 of the Cities and Villages act. This act does not repeal the former act but is supplementary to it, and its provisions are to be read in connection with the provisions of the former act, the same as if it were a part of that act.

It is to be observed that the power to designate depositaries is vested in the city council and that the city treasurer has no voice in the matter; that he is made the custodian of the money and is not responsible for such corporate funds as are deposited in city depositaries in accord-

ance with the ordinances, rules and regulations prescribed
by the city council; that the money is to be deposited in
such "place or places" as may be designated by ordinance,
and that the city council may "designate as many deposi-
taries as it deems necessary for the protection of the city's
interests," and "shall have power to pass all necessary ordi-
nances" to carry the provisions of the statute into effect
and "provide rules applicable thereto." (Hurd's Stat. 1913,
chap. 24, pars. 96, 193*aj*.)   If the law is as contended by
appellant, that as soon as the city council designates one or
more depositaries its power is exhausted and the city treas-
urer may then, at his option, deposit the corporate funds
in such one or more of the depositaries named as he pleases,
then substantially all of the foregoing provisions of the
statute are idle and meaningless.   No force or effect what-
ever can be given to the provisions authorizing the city
council to designate "as many depositaries as it deems nec-
essary," if, when in the exercise of that discretion the city
council designates seventy-two different banks as city de-
positaries, the treasurer can nullify such act of the city
council and at his option deposit all of the city's funds in
but one of such seventy-two banks so designated by the
city council as city depositaries.   Nor would there be any
rules and regulations which the city council could provide,
other than those which should govern the treasurer in
making deposits of the city's funds in the various deposi-
taries designated by it, as the method for withdrawing
funds from the city treasury is fixed and prescribed by
the statute, and the city council has no power to prescribe
additional rules and regulations in respect to that matter.
The only matter open and subject to regulation by the city
council, within the provisions of this act, is the deposit of
the city's corporate funds.   If the city council has no ju-
risdiction over the city treasurer and the deposits of the
city's funds after the depositaries have been named by it,
then there is nothing for it to provide rules and regula-

tions for, pursuant to the authority conferred upon it by these various provisions of the statute above referred to. Such a construction would be to render the act, in some of its essential provisions, meaningless and to give to the language of the statute a construction which is always to be avoided, as it is a cardinal rule in construing statutes that they are to be so construed as to give effect to each word, clause and sentence, so that no word, clause or sentence shall be rendered superfluous or void, (36 Cyc. 1128; *Crozer* v. *People,* 206 Ill. 464;) and at the same time that construction is to be adopted which will give effect to the intention and object of the legislature in adopting the enactment.

One of the objects sought to be accomplished by the act of 1905 was to enable cities to secure interest on their deposits of corporate funds. In order to do this and to secure the highest rate obtainable the statute requires the comptroller to advertise for bids on such deposits, and vests in the city council authority to designate as many banks as city depositaries as it shall deem necessary and proper and for the best interests of the city. This provision was essential to enable the city to secure the highest rate of interest obtainable on its funds. The revenues derived by the city of Chicago from general taxation and other sources are by far too large to be handled successfully, at a reasonable rate of interest, by any one banking institution. The petition shows that the tax levy for school purposes alone for the year 1913 was $18,941,250, and that the monthly receipts and deposits of the city are, in the aggregate, from $2,000,000 to $5,000,000 per month. But few, if any, banking institutions could be found which would undertake to pay interest at the rate of two and one-half per cent upon such a large amount of money, which might be very much in excess of its demands and more than it could use to advantage, while, on the other hand, if the same amount were distributed among several banks in accordance with

their needs or demands quite the reverse might be true. To meet such conditions as these the legislature has vested in the city council full power and authority to designate as many depositaries as it deems necessary and proper for the best interests of the city. This authority expressly granted carries with it, as an incident to that power, full power and authority to fix and determine the amount to be deposited with each depositary and to prescribe all necessary rules and regulations for carrying the power thus expressly granted into full force and effect. (28 Cyc. 262, 263; *Gundling* v. *City of Chicago,* 176 Ill. 340.) In the exercise of its discretion the city council of Chicago designated seventy-two banks as city depositaries, and by ordinance fixed the maximum amount which might be deposited in any one depositary and prescribed the rules and regulations which should govern the comptroller and treasurer in making such deposits. In our judgment the provisions of sections 64 and 66 of the ordinance in question do no more than prescribe such rules and regulations and are fully authorized by the provisions of the statute hereinbefore set forth. They are also fully authorized by the provisions of section 20 of article 7 of the Cities and Villages act, which confer power and authority upon the city council to provide and establish such additional rules and regulations for the collector, treasurer and all other officers connected with the receipt and expenditures of the corporate funds as it shall deem proper, which provisions, as pointed out above in referring to section 5 of article 12 of the same act, would be wholly meaningless unless they had reference to the prescribing of rules and regulations regarding the deposit of the city's corporate funds.

Neither do we think the ordinance is invalid because it authorizes the city comptroller, instead of the city council, to designate the so-called "active bank" of deposit for each month. The office of the city comptroller is created by section 17 of article 7 of the Cities and Villages act, which

provides that the comptroller shall exercise a general super-
vision over all officers of the corporation charged in any
manner with the receipt, collection or disbursement of cor-
poration revenues and the collection and return of all such
revenues into the treasury. By section 18 of the same arti-
cle it is further provided that when a comptroller is ap-
pointed in any city, "the city council may, by ordinance or
resolution, confer upon him such powers, and provide for
the performance of such duties by him, as the city council
shall deem necessary and proper; and all the provisions
of this act relating to the duties of city clerk, or the pow-
ers of city clerk in connection with the finances, the treas-
urer and collector, or the receipt and disbursements of the
moneys of such city, shall be exercised and performed by
such comptroller, if one there shall be appointed; and to
that end and purpose, wherever in this act heretofore the
word 'clerk' is used, it shall be held to mean 'comptroller;'
and wherever the 'clerk's office' is referred to, it shall be
held to mean 'comptroller's office.'" In designating the
active bank of deposit for each month and ordering a
transfer of the funds from one bank to another so as to
comply and conform to the provisions of the ordinance
here in question the comptroller is in the exercise of his
general supervisory powers over an officer charged with the
receipt of corporate revenues, and the provisions of sec-
tions 64 and 66 of the ordinance in this respect are fully
warranted by the provisions of sections 17 and 18 of arti-
cle 7 of the Cities and Villages act.

It is further insisted that these provisions of the ordi-
nance are invalid, at least in so far as the school funds
are concerned, for the reason that section 137 of the School
law provides that "all moneys raised by taxation for school
purposes or received from the State common school fund,
or from any other source for school purposes, shall be held
by the city treasurer as a special fund for school purposes,
subject to the order of the board of education, upon war-

rants to be countersigned by the mayor and city comp-
troller, or if there be no city comptroller, by the city clerk."
(Hurd's Stat. 1913, p. 2208.)   Appellant's argument is,
that inasmuch as the statute requires that this fund shall
be held by him as a special fund, subject to the order of
the board of education, the city council has no authority to
in any way regulate or control his acts in making deposits
of such fund.   While it is true that the school fund is a
special fund raised for a special purpose, it is neverthe-
less a part of the city's funds and received and held by
the treasurer by virtue of his office as such city treasurer.
(*Brenan* v. *People,* 176 Ill. 620.)   No new or additional
bond is required of the treasurer for the safe keeping of
this fund.   His duties with respect to its safe keeping are
in no way different from his duties in respect to the funds
levied and collected for special assessment purposes.   The
language of the two provisions in this respect is similar.
With respect to the latter fund, section 12 of article 7 of
the Cities and Villages act provides that "all moneys re-
ceived on any special assessment shall be held by the treas-
urer as a special fund, to be applied to the payment of the
improvement for which the assessment was made, and said
money shall be used for no other purpose whatever, unless
to reimburse such corporation for money expended for such
improvement."   The language of section 137 of the School
law, in so far as the duties of the treasurer are concerned
with respect to that fund, is identical with that of sec-
tion 12, *supra.*   In each instance the statute directs the
money realized from such special assessment or school levy
*shall be held by the city treasurer as a special fund.*   The
duties of the treasurer with respect to each fund are there-
fore, in so far as its identity as a fund is concerned, the
same.   In each instance each fund is to be held by him as
a special fund, to be applied to a special purpose.   That
a special assessment fund is included within the provisions
of section 9 of article 7 of the Cities and Villages act there

can be no doubt, as the section expressly provides that in fixing the bond of the city depositaries the penal sum of such bond "shall not be less than the estimated receipts for the current year from taxes and special assessments levied, or to be levied, by the corporation."

Section 137 of the School law does not require that the city treasurer shall *deposit* the school funds as a special fund, but only requires that they shall be held by him as a special fund for the payment of the indebtedness properly chargeable against that particular fund, the same as special assessments are to be held for the purpose of paying for the cost of an improvement. The ordinance in question in no way interferes with the provisions of the statute. It does not contemplate the paying out of school funds or the withdrawing of the same from the custody of the city treasurer. On the contrary, it simply provides the means by which the special fund in the hands of the treasurer may be transferred from one depositary to another in the manner provided in said ordinance and still remain in the custody of the treasurer, subject to the order of the board of education for the payment of all legitimate demands against that fund. It therefore cannot be said to be in conflict with the provisions of section 137 of the School law.

As it is admitted by appellant that he has wholly failed and refused to comply with the provisions of the ordinance as hereinbefore set forth, we are of the opinion that the writ of *mandamus* was properly ordered to issue, and for the reasons given, the judgment of the superior court of Cook county will be affirmed.

*Judgment affirmed.*