John F. Larkin, Appellee, v. R. W. Stewart et al., Trustees of the Employees' Stock Purchasing Plan of the Standard Oil Company, Appellants.

Gen. No. 32,246.

Opinion filed February 27, 1928.

HICKS & FOLONIE, for appellants.

NAT M. KAHN, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the defendants seek to reverse a decree of the circuit court of Cook county, whereby it was decreed that they pay complainant $2,263.

On April 4, 1928, the complainant filed this bill against the Standard Oil Company, a corporation, and R. W. Stewart, W. M. Burton and E. G. Seubert, trustees of the Employees' Stock Purchasing Plan of the Standard Oil Company. The trustees will be hereinafter referred to as defendants. The cause was heard

upon the bill of complaint, the answer of the Standard Oil Company and the answer of the defendants. No evidence being offered. The defendants filed their answer to the bill. Complainant's exception to a paragraph of the answer was sustained. Thereupon the defendants, by leave of the court, filed an amended answer. Again a similar exception was filed and sustained and the defendants filed an amended and supplemental answer, to which the same exception was sustained. Thereupon the defendants elected to stand by their answer. The matter was set down upon the bill and answer and a decree entered in favor of the complainant.

From the allegations of the bill it appears that complainant, a resident of Chicago, had been in the employ of the Standard Oil Company as a steam fitter and foreman of the steam fitting work for a period of about 13 years; that for the purpose of inducing its employees to continue in the steady and faithful performance of their duties, the Standard Oil Company proposed entering into a stock purchasing plan, which provided *inter alia* that its employees might make periodical payments from their wages to certain trustees and that the Standard Oil Company would then also pay to the trustees an amount equal to one-half of that paid by the employee; that certain of the employees, including the complainant, entered into the agreement and that the defendants were the trustees of the funds under the stock purchasing plan; that the plan extended over a 5-year period commencing March 31, 1921, and that the money coming to the trustees from the employees and from the Standard Oil Company would be used by the trustees in purchasing stock of the Standard Oil Company on account of such employee; that the plan was to be terminated on the 31st day of March, 1926, at which time the trustees would deliver to each employee, who had agreed to the proposition, the shares of stock and all benefits derived

under the plan during the 5-year period. Further allegations of the bill are that complainant accepted the proposition and paid an average of $20 per month to the trustees, beginning March 31, 1921; that the Standard Oil Company paid to the trustees an amount equal to one-half of that paid by the complainant; that the trustees rendered annual statements to the complainant, showing the state of his account, the last covering the period ending March 31, 1925, which showed that $1,581.38 had accumulated from complainant's earnings and the Standard Oil Company's deposits with the trustees. It further showed that the trustees had purchased for the benefit of the complainant 32 shares of stock of the Standard Oil Company. It is further alleged that complainant continued to perform his duties as employee of the Standard Oil Company until the 31st of December, 1925, when he was discharged; that he remonstrated against the discharge and claimed that it was not justified. The bill then sets up a provision of the stock purchasing plan which is as follows:

"An employee who leaves the service of the Company voluntarily, or is discharged for good cause (of which the Trustees shall be the sole judges), shall thereupon cease to be a participant in the plan, and his account shall be closed by returning to him the amount of his deposit, with interest, at the rate of 6% per annum, or at the option of the Trustees, by assigning to him the equivalent thereof in stock of the Company, to be reckoned at the average cost thereof to the Trustees, during the period that he may have been a participant in the plan."

The bill then alleges that the attempted discharge was improper because not based upon any "good cause"; that he was not given the usual notice of one week (he being paid weekly); that at the time of his discharge, there were only about three months remaining of the 5-year period covered by the stock purchas-

ing plan; that after he was discharged (the date not being given) he tendered to the defendants the amount of his usual payments under the plan, but that they refused to accept it and that he was not permitted to resume his work with the Standard Oil Company; that at no time had he received from the defendant trustees any communication or declaration in any manner that they were of the opinion or had determined that the discharge of complainant by the Standard Oil Company was for "good cause"; and that, therefore, the failure of the trustees to give complainant such notice in equity and good conscience constituted a waiver of the right of the trustees to apply the provision of the employees' stock purchasing plan hereinbefore set forth. It was further alleged that on the 31st of March, 1926, the trustees tendered to complainant in full satisfaction of all his claim $1,314.57, being at least $1,200 less than he was entitled to receive and he refused to accept the money tendered; that the trustees threatened to forfeit his rights, which were at least worth $1,200, by giving him a purported notice that they had determined his discharge was for good cause. The prayer was that they be enjoined from giving him such notice and for general relief.

The defendants, trustees, filed their answer, which, among other things, admitted that complainant was an employee of the Standard Oil Company and had entered into the stock purchasing plan; that the money complainant had contributed to the fund, under the stock purchasing plan, with interest thereon at 6 per cent computed to March 31, 1925, amounted to $1,314.57, which they tendered to him, but that he refused to accept it. The answer further set up that complainant was discharged about January 4, 1926; that in their judgment the discharge was for good cause and that, by virtue of such discharge, complainant ceased to be a participant in the plan, but was entitled to the money he had deposited with them with

interest thereon at the rate of 6 per cent per annum. The answer further averred that the complainant did not perform his services for the Standard Oil Company satisfactorily, but, on the contrary, abandoned his work and gave no reasonable excuse; that at divers times before he was discharged, he was late in reporting for work and was negligent in the performance of his duties; that a number of times he did practically no work, although assigned specific duties to perform; that he refused to obey instructions and made unreasonable claims against his employer, claiming the right to double time for which he was not entitled; that he made threats against his employer to secure the intervention of the union of which he was a member, to embarrass and stop the work of his employer; that he refused to accept orders from his superiors; that he criticized the policies of his employer and that he was a trouble maker. A copy of the stock purchasing plan is attached to and made a part of the answer. The defendant, the Standard Oil Company, filed its answer, in which, among other things, it set up that the complainant, about January 4, 1926, was discharged for good cause and that by reason of such discharge he was entitled to the return of the money he had deposited with the trustees, with interest thereon, which was tendered him, but which he refused to accept. The answer also sets up that the complainant did not perform his duties satisfactorily and specific derelictions are set forth substantially the same as those in the answer of the defendant trustees.

Complainant excepted to the answer of the trustees in that they had failed to specifically answer the allegations of the bill which charged that they had not given complainant notice that the trustees had determined that his discharge was for good cause. The exception was sustained. In its supplemental and amended answer the trustees set up that in January, 1926, shortly after complainant was discharged he ten-

dered to them payment under the stock purchasing plan which they declined and refused to accept on the ground that he had theretofore been discharged for good cause.

The court, after sustaining complainant's exception to its amended and supplemental answer, entered a decree which recites that the matter came on to be heard upon the bill of complaint, the answer of the Standard Oil Company and the answer of the trustees. The exceptions of the complainant to the answer of the trustees having been sustained and the trustees having elected to stand by their answer, the court found that after complainant's discharge it was the trustees' duty to adjudicate, within a reasonable time whether such discharge was for good cause and to notify complainant of their decision and that "the trustees failed to declare in any manner to said complainant that said complainant was discharged for good cause," and that the declaration of the trustees, made in their answer to the effect that they had determined that complainant had been discharged for good cause, was of no avail because not made within reasonable time. The decree made other findings, which we think unnecessary to mention here, the suit was dismissed as to the Standard Oil Company and it was decreed that the trustees pay to the complainant the amount he would be entitled to under the stock purchasing plan as though he had not been discharged.

The cause having been heard on a bill and answers, the answers are to be taken as true. *Headen v. Cohn,* 292 Ill. 210; *Kingman & Co. v. Mowry,* 182 Ill. 256; *Roach v. Glos,* 181 Ill. 440.

Complainant contends that the decree was entered *pro confesso,* but this is obviously unsound. The decree was entered upon the bill and answer and it is so expressly stated in the decree. A decree *pro confesso* would obviously be improper. But the complainant contends that in any event the decree is right and should

be affirmed because under the terms of the stock purchasing plan it was the duty of the trustees to determine whether his discharge by his employer, the Standard Oil Company, was for good cause and that he be given notice of the time and place when the matter was to be determined by the trustees. We think this contention cannot be sustained. The provision of the stock purchasing plan, which is above quoted, provides that where an employee has been discharged for good cause, of which the trustees shall be the sole judges, he shall thereupon cease to be a participant in the plan, and the money which he has deposited with the trustees, with interest thereon at the rate of 6 per cent per annum, shall be returned to him. There is no provision requiring the trustees to take any action to determine whether his discharge has been for good cause and that he be notified by the trustees so that he might appear and present his side of the matter. But even if the trustees were required to determine that his discharge was for good cause, they did so a few days after his discharge in January, 1926, when he tendered to them payments under the stock purchasing plan and which they refused to accept, basing their refusal on the ground that he had been discharged. Moreover, on this record it is admitted that he did not perform his duties faithfully, but on the contrary that he was inattentive to them as appears from the allegations of the answers above mentioned. Complainant's exception to the answer should not have been sustained. Under the record all that complainant was entitled to was the amount of money that he had deposited, together with interest thereon at the rate of 6 per cent per annum and which sum was tendered to him by the defendant trustees.

The decree of the circuit court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT, P. J., and McSURELY, J., concur.