## Kathleen F. Cummings, Appellee, v. Chicago, Aurora and Elgin Railway Company, Appellant.

### Gen. No. 45,844.

Opinion filed December 10, 1952. Released for publication December 31, 1952.

FRIEDMAN, ZOLINE & ROSENFIELD, of Chicago, for appellant; JOSEPH T. ZOLINE, and JACK H. OPPENHEIM, both of Chicago, of counsel.

BEN COPPLE, of Chicago, for appellee.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an action for breach of an alleged employment contract and for vacation pay. The court without a jury found for plaintiff and entered judgment for $465, being $232.50 for damages under Count I, and $232.50 for vacation pay under Count II. Defendant has appealed.

Plaintiff began to work for defendant's predecessor in November 1928 and for defendant in July 1945. For more than a year before January, 1951 she had the position of purchasing agent at $465 per month. January 31, 1951 she received the following notice: "Due to the strike, which has forced a suspension of all operations, the Company is constrained to suspend your employment until such time as operation can be resumed. You will be notified when your services are again required. . . . The Management." March 15,

1951 she was told that her services were no longer required. This suit followed.

In Count I of her amended complaint she alleged that the notice led her to believe that she would be re-employed and consequently she sought no other employment, holding herself in readiness and incurring damages thereby in the amount of six weeks' salary. In Count II, she alleged that defendant's custom of giving two weeks' vacation with pay was part of her employment contract, and that having worked the full year of 1950 without a vacation she was entitled to the vacation in 1951. The defense was that there was no employment contract, but a hiring at will; that the notice did not lead plaintiff to believe she would be re-employed nor induce her not to seek other employment; and though the vacation custom was followed, it was not part of the relationship arising from a hiring at will, and was discretionary in the defendant to grant.

The strike of the Railway Clerks Union lasted 41 days. Plaintiff was then told she would not be needed "any more." During this six weeks she talked to the defendant's office about twice a week, saying she was anxious to get back to work, and inquiring "how it looked." She was told "it does not look too good, it might be drawn out." No reason was given her for the decision not to re-employ her but increased wages granted Union necessitated economies through staff reductions and the inference is plain that this was the reason. Plaintiff was not a member of the Union though she had been before her promotion. She retained her clerkship seniority standing while acting in the executive capacity. A Clerical Group Seniority List shows plaintiff's rank as No. 22, and indicates that as clerk 12 days vacation were due her in 1951. This vacation was earned under the Union agreement, which provides that no vacation with pay would be

due an employee whose employment had ended before the vacation was taken.

The question on appeal is whether the findings for plaintiff on the two counts are erroneous as a matter of law.

■■ It is not disputed that, since plaintiff's salary was paid monthly with no agreement as to the period of duration, the relationship is a hiring at will. *White v. American Electric Fusion Corp.*, 328 Ill. App. 128; *Fuchs v. Weibert*, 233 Ill. App. 536.

■■ We think the finding on Count I is erroneous. Assuming but not deciding, there was a breach of promise to rehire plaintiff, there is no basis whatever for the allowance of two weeks' pay for damages. Plaintiff claims that the notice has but one meaning, i.e., that plaintiff was "laid off" for the duration of the strike. If she were entitled to damages for standing by during the period, the measure would be six weeks' pay. There is nothing to show that she incurred "two weeks pay" damages after the alleged breach.

■■ There was no promise, however, to re-employ. The notice suspends plaintiff's employment until operation can be resumed. The word "until" suggests temporariness, to end when the strike is over. The next sentence tells her she will be notified when her services are again required. Read in connection with the earlier sentence this seems to say that when the strike ends her services will be required, and plaintiff will be notified. Nevertheless, we cannot reasonably construe the notice as a promise to rehire. There is no mutuality. Consideration for the promise is not pointed out though plaintiff implies reliance on her forebearance to seek work while she "stood by." Defendant could not have claimed a breach had plaintiff been employed elsewhere during the suspension. There being no understanding on the part of the de-

fendant to continue employment for a definite period, plaintiff cannot recover. *Orr v. Ward,* 73 Ill. 318.

Had there been a promise to re-employ her, the relationship would have been again a hiring at will because there is no contention that duration of re-employment was specified. Therefore the plaintiff could have been discharged immediately upon re-employment with no liability arising to defendant. She must be presumed to have known that even if there were a promise to re-employ, it gave rise to no more than a relationship which left either party free at any time to terminate. *Davis v. Fidelity Fire Ins. Co.,* 208 Ill. 375. She was under no obligation to stand by and wait. We agree with the defendant that both parties may have expected that re-employment would take place, but this does not affect the matter. *Orr v. Ward,* 73 Ill. 318. Plaintiff may have suffered a loss because of her anxiety to work for defendant. The question however, as defendant pointed out in oral argument, is a legal one. The case of *McGee v. St. Joseph Belt Ry. Co.,* 232 Mo. App. 639, 110 S. W. (2d) 389 is not helpful because there defendant breached a contract duty and plaintiff had a right to stand by and recover.

We think the court correctly decided the issues in Count II. The testimony shows that the right to a two weeks' vacation arose from plaintiff's contract of employment. The right was subject to the limitation that it had to be earned, that is, plaintiff would not get a vacation the first year of employment, but would earn a vacation in the first year to be enjoyed the following year. This testimony was buttressed by that of witnesses of both parties that the customary usual practice was to give the executives two weeks' vacation with pay each year. Since plaintiff's right arose from her contract of employment, a corresponding obligation was imposed on the defendant to secure

the benefits represented by the right. There was no discretion in the defendant once plaintiff had earned the vacation to decide whether she should have it. There is nothing to justify a conclusion that plaintiff forfeited this benefit under the Union agreement because she was suspended before she enjoyed it, nor since she did not enjoy it in 1950 she forfeited it. Neither *Gutzwiller v. American Tobacco Co.*, 97 Vt. 281, 122 Atl. 586 nor *Nicholson v. Amar*, 7 Cal. App. (2d) 290, 45 P. (2d) 697 are inconsistent with our conclusion.

For the reasons given the judgment is reversed and the cause remanded with directions, (a) to enter judgment for the defendant on Count I, and (b) to enter judgment for plaintiff on Count II in the amount of $232.50.

*Reversed and remanded with directions.*

LEWE, P. J. and FEINBERG, J., concur.