## M. Nogee, Appellant, v. Neisner Brothers, Inc., Appellee.

### Gen. No. 45,981.

Opinion filed June 23, 1953. Released for publication September 22, 1953.

RAPPAPORT, CLORFENE & RAPPAPORT, of Chicago, for appellant; HAMILTON CLORFENE, of Chicago, of counsel.

MARSHALL & MARSHALL, of Chicago, for appellee; FRANK G. MARSHALL, and SHERWIN J. STONE, both of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff sued to recover a salary bonus claimed to be due under a written contract of employment. The court found in favor of defendant, and from the judgment entered plaintiff appealed. Plaintiff was employed pursuant to a contract made May 1, 1944, which recited that plaintiff had been designated as manager of store No. 35 for defendant and that he "agrees that he has been employed at the will of Neisner Brothers, Inc. and that said employment may be terminated at any time by Neisner Brothers, Inc. for any cause deemed sufficient by an officer of the Company." The contract provided that at the expiration of the calendar year plaintiff would be entitled to receive a salary bonus of 10% on net profits of the store. Payment of this salary bonus was made conditional upon "Continuous employment by Neisner Brothers, Inc. for a full calendar year immediately preceding the determination." Plaintiff's employment was terminated October 24, 1944, that is, about two months before the expiration of the calendar year for which there was to be a determination of the amount of his bonus. It was agreed that the amount of this bonus, if plaintiff were entitled to receive it, would be $1,501. It is plaintiff's claim that notwithstanding failure of compliance with the provision of the contract upon which this bonus is dependent, he is, nevertheless, entitled thereto because of the circumstances under which his employment was terminated.

██ The only witness who appeared on behalf of plaintiff was the plaintiff himself. There were two

168

witnesses for defendant—Minkin, a supervisor, and Duffy, store operations manager. While there is a conflict with respect to some of the facts, as we will later point out, there is ample evidence to support defendant's theory of the case and the judgment of the court. From this it appears that Minkin, while inspecting defendant's store premises on October 15, 1944, learned from an employee that plaintiff was opening a music store directly across the street, in direct competition with the music department of defendant's store. Minkin went across the street and saw a large paper sign in the window of a store which read, "Watch for Grand Opening of Archer Music Box." When he returned to defendant's store, plaintiff was standing in the entrance watching him and told him for the first time that he was opening his own store. Minkin pointed out that this would be a detriment to the music department of defendant's store, which was the leading department in the Chicago area. Plaintiff then told Minkin that he had sent a letter of resignation to Neisner Brothers, Inc. He also told Minkin that he was capable of running both stores at the same time. Minkin reported the matter to his superiors, and one Duffy, store operations manager for defendant's chain, came to Chicago a few days later. Duffy had a conversation with plaintiff, urging him to remain in defendant's employ, and offering him a more lucrative position with another store. Plaintiff refused and, according to Duffy, stated that he would remain only upon condition that he be permitted to operate both stores. Duffy then telephoned Neisner, head of the business, who told Duffy he had received plaintiff's letter of resignation, the substance of which is as follows:

"I herewith wish to submit my resignation as manager of Store No. 35.

"I am going to open a Gift and Novelty Shop located on Archer, however, I wish to remain as manager of this store until the first of the year.

"I feel that it is to your advantage to send a replacement manager, as soon as possible. I will give him all the cooperation I possibly can. . . ."

Plaintiff's employment was thereupon discontinued, and defendant paid plaintiff a week's salary and cancelled an indebtedness of $375 owing by plaintiff to defendant.

██ Plaintiff asserts, contrary to the testimony of Minkin and Duffy, that he never proposed that he should be permitted to operate both stores. He also testified that he had sent in his resignation before Minkin found out about the new store. Defendant urges, as an inference of fact, that plaintiff did not send in his resignation until after it had been discovered by the supervisor that he was opening a competing store, although he had stated otherwise to the supervisor. This is argued from the facts and circumstances of the case, particularly the fact that the letter was not received by defendant until some few days after the supervisor had his conversation with plaintiff. In our opinion, the evidence supports this inference. The trial court having found for defendant, the judgment should not be reversed unless the manifest weight of the evidence is against the facts necessary to support the finding. *City of Quincy v. Kemper*, 304 Ill. 303; *Nalty v. Federal Casualty Co.*, 245 Ill. App. 180; *People ex rel. Hirsch v. Nagel*, 243 Ill. App. 490.

██ Plaintiff, in presenting his theory of the case, states that he had a contract of employment for a definite term ending December 31, 1944; that his resignation was conditional upon his remaining as manager until that date; that such resignation could not have been accepted and his employment terminated until

170

December 31, 1944; and that therefore he is entitled to the bonus. It is clear that the contract was not one of employment for a definite term. It provides explicitly that the employment was at the will of defendant and subject to termination at any time for any cause deemed sufficient by an officer of the company. Plaintiff cites *Logan v. Philippine Acetylene Co.*, 33 Philippine Rep. 177, as authority for his point. That was a case of a contract for a term which had more than a year to run, and it was there stated that a resignation offering to resign before the expiration of the term could be based upon certain conditions. *Durlak v. Sun Chemical Corporation*, 336 Ill. App. 310, cited by plaintiff is not in point.

 A careful reading of the letter of resignation in the instant case reveals that it is definite and without condition as to time, but with expression of the hope that plaintiff would be permitted to remain until the first of the year. Plaintiff in this letter urges that a replacement manager be sent at once to take his place. Could plaintiff resign and fix January 1, 1945, as the date his resignation was to take effect? If January 1st, then why not any other date? Was defendant bound to send a replacement manager and at the same time retain plaintiff and thus pay salaries to two managers in the interim? Obviously, this would be a distortion of both the contract of employment and the letter of resignation. The trial court correctly perceived the true purport of this letter. Plaintiff's real contention appears to be that his letter of resignation should be interpreted as meaning that, while he was resigning, he would like permission to be considered as staying in defendant's employ until January 1st, so that the provision of the contract providing that he had to be in continuous employment for a full calendar year preceding determination of his bonus could be fulfilled. It

171

was, in substance, asking that defendant waive that provision of the contract. Defendant refused to waive that provision, as it had the right to do. However, aside from this interpretation of the letter of resignation, we are of the opinion that defendant acted within its rights.

 The contract of employment is couched in language which makes the employment terminable at the will of defendant for any cause deemed sufficient by an officer of the company, and it has been held in some cases involving contracts containing language of similar general import that the employer is the sole judge as to whether the cause is sufficient. *International Harvester Co. v. Boatman,* 122 Ill. App. 474; *Kendall v. West,* 196 Ill. 221; *Larkin v. Stewart,* 248 Ill. App. 152; *Montgomery Ward & Co., Inc. v. Guignet,* 112 Ind. App. 661, 45 N. E. (2d) 337. Nevertheless, in such a case some courts have held that the termination of employment must not be so arbitrary as to amount, in effect, to a fraud on plaintiff after he has labored to earn a bonus, or that the transaction was not merely an artifice to deprive plaintiff of his bonus. In this case, defendant has stated its willingness to stand or fall on the proposition that its action was not arbitrary. In support of this, defendant points out that the condition under which plaintiff wanted to continue as manager of defendant's store would have meant plaintiff's giving defendant a divided loyalty; that Christmas was approaching, and the Christmas trade was very important in defendant's business; that plaintiff during that period would be engaged in preparation for the opening of his own store, if, indeed, he did not intend to open it before Christmas; that plaintiff himself recognized that there would be need for a replacement manager immediately, even while he was continued as manager; and that defendant was not willing to make

such an arrangement and, therefore, terminated plaintiff's employment. We certainly cannot find that such action was arbitrary or fraudulent or taken with the intention of depriving plaintiff of his bonus.

*Judgment affirmed.*

Tuohy and Robson, JJ., concur.