Frank L. Stetson, Appellee, v. Chicago, Aurora and Elgin Railway Company, Appellant.

Gen. No. 46,249.

Opinion filed May 3, 1954. Released for publication May 27, 1954.

FRIEDMAN, ZOLINE & ROSENFIELD, of Chicago, for appellant; JOSEPH T. ZOLINE, and JACK H. OPPENHEIM, both of Chicago, of counsel.

274

Ben Copple, of Chicago, for appellee.

Mr. Justice Friend delivered the opinion of the court.

Plaintiff, having been discharged from his employment by defendant, brought suit for two weeks' "vacation pay" which he claims to have "earned." Findings in his favor resulted in a judgment from which defendant has taken an appeal.

There were four such suits instituted against defendant by separate plaintiffs, all represented by the same attorney. In the first of these, *Cummings v. Chicago, A. & E. Ry. Co.*, 348 Ill. App. 537, plaintiff's claim for two weeks' vacation pay was sustained. After the opinion had been filed, the cases of the three remaining plaintiffs were called for trial, including the case now under consideration. In order to simplify the proceedings in the undetermined cases—all three limited to the single question of vacation pay—it was stipulated by counsel that the three plaintiffs, Frank L. Stetson, Oscar C. Gettinger and E. R. Ander, would testify in the *Stetson* case, and that the findings and judgment in the trial court in the other two cases would be in conformity with the opinion of this court in the present appeal. Accordingly, the facts bearing on the claims of Gettinger and Ander are comprised within the testimony of the present case which, however, involves only the claim of Stetson.

It appears from the evidence that in May 1945, when Stetson entered the employment of defendant's predecessor, as a real estate and tax agent, the management was vested in voting trustees. Plaintiff testified that Arthur Schwartz, one of the trustees, told him that he would receive a two-week vacation after the first year of his employment. The voting trusteeship expired in

1946, when the newly organized defendant company was chartered to operate the railway line, and plaintiff continued in his same position with the reorganized company. He received his first vacation during the period covering the last week of 1946 and the first week of 1947. He took no further vacation in 1947. In September 1948 he had two weeks' vacation, and in 1949, about nine days'. In the fall of 1950 he again received two weeks' vacation. On February 9, 1951 he was discharged because of a strike which forced a suspension of all operations of the railroad. This occurred within three or four months after plaintiff had received two weeks' vacation. He was never re-employed by defendant.

Gettinger was employed by the railroad in 1908, becoming a supervisory employee on September 1, 1920, when he was told that he would receive a two-week vacation with pay each year after he had worked for one year. He took his first vacation in 1921, and thereafter two weeks each year, including 1948, except for two years during the depression of the 1930's, when the management ordered that no supervisory employees were to take vacations. In 1949 he voluntarily dispensed with his vacation. In 1950 he took two weeks, from October 9 to October 21. On January 31, 1951 he was discharged for the same reason as Stetson.

Ander began his employment with defendant's predecessor in 1908, resigned in 1910, and was again employed in 1914. Thereafter he worked in various capacities until 1919, when he again resigned. In September 1923 he was re-employed in a supervisory capacity, and was then told that he would receive a vacation after he had served in that capacity for a year. He took his first vacation in 1924, and usually took two weeks each year thereafter, except during the two depression years. He customarily took his vaca-

tions in the latter part of August and the first part of September. In 1950 he took one week from August 20 to August 27, and his second week from September 3 to September 10. He too was discharged January 31, 1951, or approximately three months after he had taken a two-week vacation; and his discharge was likewise attributable to the strike.

With respect to supervisory employees, the practice at the defendant's office was that the granting or non-granting of vacations to such employees was discretionary with the management. No one was entitled to a vacation as a matter of right or because he had "earned" it. Ordinarily, after a supervisory employee had completed one year of service, he would be granted a two-week vacation; however, in some years the management denied any vacations, regardless of the length of service—because economies had to be effected or because certain employees could not be spared from their work. Such instances occurred in 1932 and 1943. Also, it sometimes happened that employees voluntarily decided to pass a vacation. When no vacation was taken by an employee in a particular calendar year, whatever the reason, no allowance was made for vacation pay in lieu of a vacation, nor did any right accrue to such employee to carry forward to the succeeding year the vacation period or any part thereof. On termination of employment, whether by discharge or retirement, under the provisions of the Railroad Retirement Act, there was no set practice of management as to whether vacation pay would be granted. Each case was considered separately. In most instances, when an employee retired without having taken a vacation during the calendar year, no vacation allowance was given. On other occasions, the management in its discretion would grant a vacation allowance upon retirement or discharge.

277

In the *Cummings* case the testimony disclosed that the right to a two-week vacation arose from plaintiff's contract of employment, and that the right was subject to the limitation that it had to be "earned"—i. e., plaintiff did not get a vacation the first year of employment, but would "earn" a vacation in the first year, to be enjoyed the following year. The court held: "Since plaintiff's right arose from her contract of employment, a corresponding obligation was imposed on the defendant to secure the benefits represented by the right. There was no discretion in the defendant once plaintiff had earned the vacation to decide whether she should have it."

In the present proceeding plaintiff claimed that for work done in 1950 he "earned" the right to take a two-week vacation during the summer or fall of 1951, and he claims that he was prevented from doing so by reason of his discharge on February 9, 1951; wherefore, he sued for the equivalent in vacation pay, or $214.50. He sought to bring the facts in this case within the scope of the court's holding in the *Cummings* case, but, as we read that decision, "plaintiff's right [to a two-week vacation] arose from her contract of employment." Accordingly, the questions to be determined here are: (1) whether plaintiff had a contract of employment embodying vacation benefits; and (2) whether, assuming the existence of such a contract, the circumstances bearing on the period of time worked by him and the amount of vacation already received, were such as to entitle him to two weeks' vacation pay upon his discharge.

 On the first point it clearly appears from plaintiff's own testimony that nothing was said to him with respect to "earning" vacation benefits in addition

278

to salary. None of these employees were told that for each year's work they would "earn" a two-week vacation. When employed, they were simply told what the usual practice was as to the granting of vacations to supervisory employees—a voluntary practice—the continuance of which was discretionary. Even when vacations were granted, it was understood that an employee could not, by foregoing a vacation granted him in one year, carry it forward to the following year; plaintiff himself so testified. Plaintiff commenced work in 1945 and received his first vacation a year and a half later; he had no additional vacation in 1947, nor did he make any claim for pay in lieu thereof. Also, in 1949 plaintiff took only eight or nine days, leaving five or six days for which, if there actually had been a contract supplementing salary with vacation benefits, plaintiff would have been entitled to "earned" vacation pay; but there was no such contract, and no such claim was made. An examination of the record shows an absence of any direct testimony that the management had ever told an employee that his work would "earn" him a vacation or vacation benefits in addition to his salary, and the parties, by their actions in dealing with parallel situations in the past, evidently interpreted and construed the arrangement as to vacations as not entitling them to vacation pay for vacations not taken or not granted; it was a matter of discretion with the management. It is well settled that "in seeking to ascertain the intention, regard will also be had to the practical construction, if any, which the parties, by their acts, have given to the contract" (*Whalen v. Stephens,* 193 Ill. 121); and that "the interpretation of parties to an agreement . . . may be proved and is often entitled to great weight in arriving at the intention of the parties" (*Kleinhans v. Reasor,* 345 Ill.

279

App. 467, and cases cited therein). See also *Walters v. Walters,* 409 Ill. 298.

 With respect to the second question, we think that the facts bearing on the period of time worked by plaintiff did not entitle him to two weeks' vacation pay upon his discharge. He takes the position that by reason of having worked during the year 1950 he "earned" two weeks' vacation in the year 1951, but did not receive it because his employment was terminated on February 9 of that year. He was admittedly an employee at will, and could therefore be discharged at any time. Obviously at the time of his discharge he would not have performed the year of service for which a vacation would be "due" him in any event. He knew that there was a policy in force that no vacation would be carried forward from one calendar year to the next. His suit was specifically for "two weeks earned vacation pay" by reason of his employment during the year 1950. See the recent case of *Nogee v. Neisner Bros., Inc.,* 351 Ill. App. 166, wherein it was held that the employer was not required to make payment of a salary bonus conditioned upon continuous employment for a full calendar year where the employee's services were terminated some two months before the end of the calendar year.

What we have said with reference to Stetson's claim likewise applies to the claims of Gettinger and Ander. For the reasons stated, the judgment of the municipal court should be reversed and the cause remanded with directions that judgment be entered in favor of defendant and against plaintiff, and it is so ordered.

*Judgment reversed and cause remanded with directions.*

NIEMEYER, P. J. and BURKE, J., concur.