**MARINE INSPECTION SERVICE, INC., Appellant,**

v.

**Gerald T. ALEXANDER, Appellee.**

**No. 16863.**

Court of Civil Appeals of Texas, First District, Houston.

June 9, 1977.

Eikel & Davey, Robert Eikel, Houston, for appellant.

Turner & White, Tom M. White, Houston, for appellee.

EVANS, Justice.

This suit was brought by appellee against his former employer, the appellant, to recover two weeks salary in lieu of vacation time which he claimed was due to be paid to him upon termination of his employment. After a jury trial, judgment was rendered in favor of appellee for the stipulated amount of two weeks vacation pay, plus attorney's fees.

Appellee was employed by appellant from August 22, 1974 until May 8, 1975. In his letter of resignation dated May 7, 1975, appellee stated his understanding that he became entitled to two weeks vacation after a tenure of six months with the company, and that he wished to take his vacation during the period May 19, 1975 through May 31, 1975, in which event his resignation would become effective at the end of May. He stated however, that if appellant preferred, it could pay him for his vacation and that his letter in such event would serve as two weeks notice to become effective on May 20, 1975. The appellant responded to this letter with a notation dated May 8, 1975, stating that in view of appellee's resignation and the understanding of the conditions upon which he was employed, it elected to give notice of termination effective that date. The appellee subsequently filed this suit, contending that he was entitled to two weeks of vacation pay in lieu of vacation time and that appellant had made only partial payment of his vacation pay, leaving a balance due and owing in the sum of $501.00.

The appellee testified that he had an oral agreement with appellant concerning the terms of his employment. He testified that he had been employed by Mr. Worsham, the president of the company, to be trained as a marine chemist. The pertinent portions of his testimony with respect to his understanding of the terms of his employment agreement are set forth below:

"Q. What was your understanding—what was that agreement—what was your understanding of going to work for Marine Inspection Services, Inc.?

A. I was to receive $1250 a month plus expenses, hospitalization and training for the position for about 6 months. I would receive no night duty or weekend duty while I was in training classification. I was to be paid 2-weeks vacation after I had a tenure of 6 months; I would also be given a car after I certified or was certified."

\* \* \* \* \* \*

"Q. Did you, in fact, go to work under those terms?

A. I did. My employment started August 22, 1974.

Q. Okay. Did you ever, at any time, receive a written memorandum or anything of the nature of which or from Mr. Worsham or from the company as to what your vacation would be?

A. They gave me a couple of bulletins one of which, I think, Bulletin No. 2 says, 'You will receive two weeks vacation per year after 6 months tenure.'

Q. And, was there any doubt in your mind as to what, after you were with them 6 months, you were entitled to?

A. None whatsoever. The secretary put the vacation schedule on the bulletin board and on two occasions she mentioned for me to go ahead and put my vacation up. The meetings started in the early Spring. He mentioned to us that our vacation schedule was put on the board and for us to fill in the weeks that we wanted."

The appellee stated that he submitted his resignation on May 7, 1975, and that he discussed the matter with Mr. Worsham on May 8, 1975. He testified that he had received the total of $403.20 as compensation after he submitted his resignation and that the balance due him was $501.00. He gave his impression of his May 8 discussion with Mr. Worsham as follows:

"Q. Were you able to discuss with him what was owed, or what you felt was owed?

A. I did when we had the meeting. I told him that I felt that he owed me in good faith what he promised me when I started to work which was 2 weeks vacation. I also mentioned to him that he was aware that I could have taken my 2 weeks vacation and come back at the end of the time period and resign."

The appellant's representative, Mr. Worsham, testified that when he had employed the appellee, he had informed him that he would be given two weeks a year vacation after he had been with the company for six months. He indicated the company's position to be that the first six months of the

year would not apply in determining the employee's entitlement to a vacation for a year's work. However, he further testified that an employee could take a two weeks vacation after being with the company for the six months period, and that if the employee did not finish out a full year's work, this would result in a loss to the company to the extent that the vacation was unearned.

The trial court submitted one special issue with respect to the appellee's entitlement to vacation pay, to which the jury responded as follows:

"Special Issue Number 1

Do you find from a preponderance of the evidence that Gerald T. Alexander is entitled to two weeks vacation pay.

Answer: We do."

On the basis of this finding and the party's stipulation as to the amount of damages in case the verdict was in favor of the plaintiff, judgment was entered in favor of the appellee for the sum of $501.00, and also for the sum of $500.00, being the amount of attorney's fees found by the jury.

⬛ In its first two points of error the appellant attacks the evidence as being legally and factually insufficient to support the trial court's judgment. It contends that there was no evidence of an agreement on the part of the appellant that the appellee would receive vacation pay in lieu of taking a vacation, and that the jury's finding to the first special issue was against the great weight and preponderance of the evidence.

The appellant concedes that the appellee could have taken two weeks vacation after he had been with the company for a period of six months had he continued his employment with the company. If the appellee had taken his vacation and then resigned, the company would of course have suffered a loss in the sense that the appellee would not have earned a full year's vacation pay. However, it is the appellant's contention that by tendering his resignation, the appellee notified the company that he would not remain with the company for a full year, and, therefore, was not entitled to a full two weeks vacation.

There is evidence which would support the appellee's contention that he was entitled to take a two weeks vacation after he had been in the company's employment for a period of six months. However, there is no evidence that the company ever agreed that appellee would be entitled to a paid salary in lieu of vacation time. The appellee's testimony to the effect that he was "to be paid two weeks vacation," considered in the light of his other testimony and evidence in the case, reflects only an understanding on his part that he was entitled to a two weeks paid vacation after he had been with the company for a period of six months.

⬛ In the absence of an express agreement or some statutory basis for the payment of additional compensation, it must be considered that services rendered by an employee during the course of his employment, and which are of a nature similar to his regular duties, are to be compensated by the payment of his regular salary. 53 Am.Jur.2d, Master and Servant, § 76, p. 151. A promise to pay additional compensation may be implied from business usage or custom, if the employment agreement was entered into with reference thereto, and where under attendant circumstances it was the reasonable understanding of both parties that extra compensation would be paid. 53 Am.Jur.2d § 78, p. 153.

⬛ In the case at bar, the appellee had worked for the company some 8½ months when he notified the appellant of his intent to terminate. At that time his right to a full two weeks vacation had not accrued, notwithstanding the fact that he might have been permitted to take the two weeks vacation had he elected to do so. *Schurr v. Savigny,* 85 Mich. 144, 48 N.W. 547 (1891); *In re Pringle Engineering & Mfg. Co.,* 164 F.2d 299 (7th Cir. 1947). Although the jury reasonably could have concluded from the evidence that the parties agreed the appellee would be entitled to two weeks vacation after he had been with the company for six months, there is no evidence from which an agreement might be implied that he was entitled to two weeks salary in lieu of vaca-

tion time. *Lim v. Motor Supply, Ltd.*, 45 Haw. 111, 364 P.2d 38, 91 A.L.R.2d 1067, 1087 (1961).

In *Interstate Hosts, Inc. v. Thompson*, 435 S.W.2d 957 (Tex.Civ.App.—Dallas 1968, no writ), plaintiff had been hired as a waitress under a verbal contract of employment. At the time of her employment she had been given an "Employee's Manual", containing the following provision:

"On completion of one full year of service as a regular full-time employee, you will be entitled to one week's vacation with pay at your average straight-time rate over the previous year. After two full years of service as a regular full-time employee, you will receive two weeks' vacation, and after ten years, three weeks' vacation with pay at your average straight-time rate over the previous year."

After the completion of her first year's employment, the employee was given one extra week's pay for which she rendered no service. After her second year of employment she was given two weeks pay for which she rendered no service. On the eleventh month of her third year of employment, she was terminated as an employee. The trial court, without a jury, entered judgment for the employee for the amount of her claimed vacation pay and for attorney's fees. Reversing and rendering the trial court's judgment, the appellate court stated:

"While the question presented appears to be one of first impression in Texas its resolution seems quite simple. Any vested interest or right acquired concerning vacation pay must be determined from the terms of the contract of employment, either express or implied. There was no written contract of employment. Appellee merely applied for a job as a waitress and was employed as such for an indefinite period of time. It is not questioned that either party could terminate the employment at any time. Appellant's employment policies were set forth fully in the manual which was given to appellee at the time she went to work. These policies are plain and unambiguous concerning paid vacations. Upon completion of one full year of service as a regular full time employee one week's paid vacation was forthcoming. After two full years of service as a regular full time employee two weeks' vacation with pay was earned. In the case of appellee both of these contingencies were fulfilled and appellant complied with its obligation. However, it is undisputed that when appellee's employment was terminated she had not completed the third full year of employment. There is nothing in the contract, either express or implied, which would give appellee a vested interest or right into a pro rata share of the vacation accrued during the third year.

"There is no source of authority justifying appellee's claim for vacation pay allowance. At the time appellee was separated from service the contract with reference to vacation pay was not executed, but still executory. The identical question was presented to the court in *Stetson v. Chicago, Aurora & Elgin Ry. Co.*, 2 Ill.App.2d 274, 119 N.E.2d 395 (1954) and in denying recovery the court said, in part:

" * * *, we think that the facts bearing on the period of time worked by plaintiff did not entitle him to two weeks' vacation pay upon his discharge. He takes the position that by reason of having worked during the year 1950 he 'earned' two weeks' vacation in the year 1951, but did not receive it because his employment was terminated on February 9 of that year. He was admittedly an employee at will, and could therefore be discharged at any time. Obviously at the time of his discharge he would not have performed the year of service for which a vacation would be 'due' him in any event." 435 S.W.2d 957–8.

■ The appellant's first two points of error are sustained. Since the appellant's "no evidence" point relates entirely to and is based upon the assignment of error contained in the motion for new trial, this court may not reverse and render, and may

only reverse and remand. *Commercial Insurance Co. of Newark, New Jersey v. Puente,* 535 S.W.2d 948 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.); *French v. Brodsky,* 521 S.W.2d 670 (Tex.Civ.App.—Houston [1st] 1975, no writ).

 In view of further proceedings, the appellant's third point of error will also be considered. In this point appellant contends that attorney's fees were not recoverable under Article 2226, Tex.Rev.Civ.Stat. Ann. because the nature of the claim asserted was not for "services rendered, labor done" . . . within the meaning of the statute. This point is overruled.

The judgment of the trial court is reversed and the cause is remanded.

Judgment rendered and majority and dissenting opinions filed June 9, 1977.

PEDEN, Justice.

I would affirm. From the plaintiff's testimony that "I was to be paid 2 weeks' vacation after I had a tenure of 6 months . . .", I believe a fact issue was raised from which the jury was entitled to conclude that the company had agreed to pay him for two weeks' vacation if he elected not to take it. I do not consider that his other testimony must be construed as varying this version.