JAMES I. McCAULEY *et al.*

*v.*

ALBERT L. COE *et al.*

*Filed at Ottawa May 8, 1894.*

1. MORTGAGE—*of leasehold interest.* A mere term of years may be mortgaged, and the lien thereby created will be co-extensive with the term, and become extinguished by mere lapse of time whenever the term ends.

2. SAME—*right of mortgagee in an option of mortgagor to purchase.* A lessee, under a lease to him of one year, had an option to purchase the demised premises, and during the term gave a deed of trust on his interest in the same. The lessee and the party secured by the trust deed did not elect to purchase during the term, and failed to exercise the option before the retraction of the same by the lessor: *Held,* that the trust deed became inoperative as a security, and was a cloud on the title of the lessor and his grantee.

3. SAME—*removing, as a cloud upon the title.* Before a deed of trust given by a lessee can be declared a mere cloud upon the title of the lessor or his grantee, and removed as such, no fraud, accident or mistake being alleged, it must appear either that the deed was originally invalid, and ineffectual to convey to or vest in the trustee or his beneficiary any interest, either legal or equitable, in the property, or that by reason of some subsequent event such interest has terminated and ceased to exist, so as to render the deed no longer a valid security upon any interest or equity in the property. But if either of these facts appears, the deed of trust is only an apparent, but not a real, incumbrance, and should be removed from the title of the lessor or his grantee.

4. SAME—*mortgagee's title—no better than mortgagor's.* While the trustee in a deed of trust, and his beneficiary, acquire a lien upon the legal and equitable rights held by the grantor at the time the deed was executed, they will take no rights superior to those of their grantor. The equities to which their lien attaches are subject, in their hands, to the same contingencies, and are liable to extinguishment in the same manner, they would have been if they had remained unincumbered in the hands of the mortgagor.

5. SAME—*surrender of title by lessee—effect on his mortgagee.* Where the holder of a lease giving an option to purchase land mortgages his interest in the premises, his subsequent surrender and conveyance of all rights remaining in him, to the lessor, will in no manner affect the rights of the mortgagee.

6. Option contract—*lease with option to purchase.* A lease of land for one year contained an agreement that upon payment in full of the rent reserved, and the execution of notes and a deed of trust for $1600, in addition to the rents, the lessor would convey the property to the lessee, but imposed no obligation on the latter to purchase : *Held,* that the option thus given was more than a mere offer on the part of the lessor, which he was at liberty to withdraw at any time before acceptance.

7. Same—*consideration.* In such case, the contract embodied in the lease is an entire one, and the same consideration which supports the other provisions of the lease will apply to the option therein given to purchase during the term; and, the lease being under seal, a consideration sufficient to support all its provisions will be presumed.

8. Same—*right of lessor to retract the option.* A binding contract for an option for a given time prevents any retraction of the offer during that time. When an option is based upon a sufficient consideration, and is in the nature of a contract, it is only when the period of its continuance is definite that the right to retract is suspended.

9. Same—*withdrawal of option—notice.* After the time for electing to purchase under an option has passed, a conveyance by the party giving the option, and his subdividing the property, with other adjoining land owned by him, before acceptance of the offer, being acts inconsistent with the option, are sufficient evidence of a retraction of the offer. So, too, the filing of a bill by him to set aside a deed of trust given by the holder of the contract giving the option, is an act of the same character.

10. Same—*withdrawal of the option—not a forfeiture.* The withdrawal of an unaccepted offer to sell land, or the retracting of an option which the other party has not seen fit to exercise, involves none of the elements of a forfeiture. It deprives no party of any right and abrogates no contract, but is merely the exercise of the right by a party to recede from a proposition which the other party has not seen fit to accept.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Philip Stein, Judge, presiding.

Mr. E. W. Adkinson, for the appellants :

The proposition contained in the lease constituted but a continuing offer to sell, and could be merged into a contract only by an acceptance, and compliance with its terms. *Haven* v. *Wakefield,* 39 Ill. 509; *Sutherland* v. *Parkins,* 75 id. 338;

*Larmon* v. *Jordan,* 56 id. 204; *Corcoran* v. *White,* 117 id. 118; *Harding* v. *Gibbs,* 125 id. 85; *Willard* v. *Tayloe,* 75 U. S. 567.

Even though the stipulation in the case could be construed as an agreement to sell, there was a forfeiture and termination thereof. *Chrisman* v. *Miller,* 21 Ill. 227; *Murray* v. *Schlosser,* 44 id. 14; *O'Neal* v. *Baptist Church,* 48 id. 349; *Anderson* v. *McCarty,* 61 id. 64.

Messrs. THORNTON & CHANCELLOR, for the appellees:

One having a contract to purchase real estate has such an interest as may be mortgaged. *Baker* v. *Bishop Hill Colony,* 45 Ill. 264; *Curtis* v. *Root,* 20 id. 518; *Hagen* v. *Brainard,* 44 Vt. 294.

A lease with privilege of purchase constitutes a mortgageable interest. *Bank* v. *Baumeister,* 87 Ky. 6.

Where there is a plain intention for a contract of sale, the law will construe a lease containing a provision for sale to be a contract. *Lucas* v. *Campbell,* 88 Ill. 447; *Murch* v. *Wright,* 46 id. 487.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, to remove a cloud upon the title to real estate. The facts are these: In 1885, Daniel Stauffer was the owner of the property in question, and, as a result of certain negotiations between him and George W. Butler, he built a dwelling house thereon, and after its completion, executed and delivered to Butler an instrument in writing in the form of a lease, bearing date October 29, 1885, by which he demised and leased the premises to Butler for the term of one year, commencing November 1, 1885, and ending November 1, 1886. The instrument was in the usual printed form of leases then in use in Chicago, and contained the various covenants and provisions ordinarily inserted in instruments of that character.

Among other things, it contained the usual provision authorizing the lessor to declare the term ended for non-payment of rent, and to re-enter and expel the lessee, and also a covenant on the part of the lessee to surrender and deliver up the demised premises to the lessor immediately on the determination of the lease, either by non-payment of rent or otherwise, and that if he should remain in possession of the same after default in the payment of rent, or after the determination of the lease in any of the ways therein provided, he should be deemed guilty of a forcible detainer of the premises under the statute and subject to eviction and removal forcibly or otherwise, with or without process of law, the lessee waiving his right to notice of the lessor's election to declare the term at an end under any of the provisions of the lease, or to a demand for the payment of rent or for possession of the premises, but stipulating that the simple fact of the non-payment of rent should constitute a forcible detainer of the premises.

The clause reserving rent was as follows: "And the said party of the second part, in consideration of the leasing of the premises aforesaid, by the said party of the first part to the said party of the second part, does covenant and agree with said party of the first part, his heirs, executors, administrators and assigns, to pay the said party of the first part, as rent for said premises, the sum of $500, in manner following: $100 cash on the execution of this instrument, the receipt of which is hereby acknowledged; $100 January 1, 1886, and $300 on or before November 1, 1886, with interest at seven per cent from date, and cost of insurance." Immediately after the foregoing clause was the following: "It is further agreed, on full payment of said sums, and the further sum of $1600, with seven per cent interest from this date, in manner following: One note for $500 due on or before November 1, 1887, and two notes for $550 each due respectively November 1, 1888 and 1889, all bearing interest at seven per cent, payable to the order of Daniel Stauffer, and secured by trust deed on the

above premises, the said first party will convey to second party the above premises by warranty deed, and subject to the taxes and assessments of 1885 and subsequent years." The instrument made no provision for a forfeiture in case of the non-payment of the $1600 above mentioned, nor was any language used expressly making time of the essence of the contract.

Butler paid the first installment of rent and entered into possession of the premises under the lease. He also paid the second installment of $100 at the time of its maturity. On the 16th day of August, 1886, and while so in possession, Butler and wife, and one Albert B. Paine and wife, joined in the execution of a deed of trust, conveying to Albert L. Coe, as trustee, the premises described in the lease, such conveyance being made to secure the payment of a promissory note for $400, executed by Butler and Paine, bearing even date with the deed of trust, and payable to the order of Sarah Curtis three years after date, with interest at the rate of seven per cent per annum. This deed of trust was placed on record the next day after its date.

Butler made no further payments under the lease, and being, as it seems, unable to make the purchase on the terms therein provided for, he, his wife joining him therein, executed to Stauffer a quit-claim deed of the premises, bearing date November 3, 1886, and at the same time surrendered to Stauffer the possession thereof. The quit-claim deed contained the following recital: "This conveyance being made to release interest in said lots under and by virtue of a clause giving the right of purchase, in the lease bearing date October 29, 1885, between the parties aforesaid, the said Butler being unable to perform the conditions of said clause on his part to be performed."

It appears from Stauffer's testimony, which is not contradicted, that he took possession of the premises upon their being surrendered to him by Butler, and that on December 31,

1886, he sold and conveyed them to Mary Keating; that he afterwards bought them back and made a re-subdivision thereof in connection with other adjoining lands which he then owned.

On the 22d day of April, 1890, Stauffer filed the original bill in this case, praying to have the deed of trust to Coe declared to be a cloud upon his title and removed as such. While the bill was pending, he sold and conveyed the premises to James I. McCauley and Thomas Swartwout, and they thereupon appeared and filed their supplementary bill, alleging the conveyance of the premises to them, and setting up substantially the same facts and praying for the same relief as in the original bill. Answers and replications were filed, and the cause being heard on pleadings and proofs, a decree was rendered dismissing the bill at the cost of the complainants for want of equity. On appeal by them to the Appellate Court, the decree was affirmed. Although the amount involved is less than $1000, the complainants have appealed to this court from the judgment of affirmance, the judges of that court having granted the necessary certificate of importance.

Before the deed of trust to Coe can be declared a mere cloud upon the title of the complainants and removed as such, no fraud, accident or mistake being alleged, it must appear, either that the deed was originally invalid and ineffectual to convey to or vest in the trustee or his beneficiary, any interest, either legal or equitable, in the property, or, that by reason of some subsequent event, such interest has terminated and ceased to exist, so as to render the deed no longer a valid security upon any interest or equity in the property. But if either of these facts appear, the deed of trust is only an apparent but not a real incumbrance upon the complainants' property, and should not be permitted to remain as a cloud upon their title.

There can be no question, we think, that Butler, at the time he executed the deed of trust, had an interest in the premises

which was capable of being conveyed by way of mortgage. We are disposed to concur with the Appellate Court in the view that the instrument under which he was then in possession was, in substance and legal effect a lease for the term of one year, only a portion of the term having then elapsed. No doubt a mere term for years may be mortgaged, and the lien thus created will be co-extensive with the term, and become extinguished by mere lapse of time whenever the term ends. So far then as the deed of trust is to be treated as a lien upon the term, it ceased to encumber the property on November 1, 1886, the day the term ended.

But coupled with the contract of leasing was the further agreement that, upon payment in full of the several sums reserved as rent, and the execution of notes and a deed of trust for $1600 in addition thereto, the lessor would convey the property to the lessee. Whatever difficulty there may be in the case relates to the interpretation and effect to be given to this clause of the instrument. It seems clear that the clause did not amount to a contract of sale, since it imposed no obligation on the lessee to purchase. The instrument contained a covenant on his part to pay the sums reserved as rent, but whether he should consummate the purchase by executing the notes and deed of trust was left wholly to his option. What right or interest then, either legal or equitable, became vested in the lessee by this option to purchase?

We are inclined to the view that the option thus given was more than a mere offer on the part of the lessor which he was at liberty to withdraw at any time before acceptance. It was an option or privilege based upon a valuable and sufficient consideration. The contract embodied in the lease was an entire one, and the same consideration which supported its other provisions applied as well to this. Besides, the lease being under seal, a consideration sufficient to support all its provisions will be presumed. The option seems to have been one which the lessee had at least until November 1, 1886, to

accept, and the power of the lessor to withdraw it prior to that date may well be questioned on the ground supported by many of the authorities, that a binding contract for an option for a given time, prevents any retraction of the offer during that time. Tiedeman on Sales, sec. 41, and authorities cited in note.

But even assuming the law to be as just stated, the option can not be regarded as binding on the lessor for an indefinite period after the termination of the lease. Even where an option is based upon a sufficient consideration and is in the nature of a contract, it is only where the period of its continuance is definite, that the right to retract is suspended. The only definite period mentioned in the lease is the term of one year covered by the demise, and after the termination of that period without an acceptance, even if the option itself did not then expire, it continued from that time subject to be retracted at any time by the lessor.

While it is true that the trustee in the deed of trust and his beneficiary acquired a lien upon the legal and equitable rights held by the lessee at the time the deed was executed, they acquired no rights superior to those of the lessee. The equities to which their lien attached were subject in their hands to the same contingencies and were liable to extinguishment in the same manner that they would have been if they had remained unincumbered in the hands of the lessee. It is not pretended that either they or the lessee, up to the time of filing the original bill in this case, which was nearly three and one-half years after the termination of the lease, either accepted the offer of sale contained in the lease, or did any act evidencing an intention to accept it. The lessee, having released and surrendered to his lessor all right remaining in him to exercise the option by the execution of the quit-claim deed, of course could not thereafter accept. But such transaction between him and his lessor could not affect the rights of the

mortgagees one way or the other. They, as the assignees of such equities as were based upon the option, were bound to take the same steps to mature and perfect their rights as their assignor would have been compelled to take if no assignment had been made. Even if their long delay in electing to exercise the right of purchase, for which no excuse is given, is not of itself sufficient to extinguish their right, it is clear that during all that period the lessor had the right, as against them, to retract his offer of sale, and any act on his part evidencing an intention to retract, if such is shown, had the effect of extinguishing the equities of the mortgagees.

We think the sale and conveyance of the demised property by the lessor to Mary Keating, made about two months after the expiration of the lease, was an act of that character. *Dickinson* v. *Dodds*, L. R. 2 Ch. Div. 463. The same thing may be said of his re-subdivision of the property in connection with other adjoining property owned by him after his re-purchase from Mary Keating. These were acts inconsistent with the continuance of the offer, and evidenced an intention to retract it. It may also be said that the institution of this suit by the lessor to remove the deed of trust as a cloud upon his title before any acceptance of the offer is an act of the same character.

We do not think that any question of declaring a forfeiture is involved in the case as seems to have been supposed by both the Superior and Appellate Courts. The withdrawal of an unaccepted offer, or the retracting of an option which the other party has not seen fit to exercise, involves none of the elements of a forfeiture. It deprives no party of any right and abrogates no contract, but is merely the exercise by a party of the right to recede from a proposition which the other party has not seen fit to accept.

Nor are we able to see any force in the contention made by counsel that the position of the defendants is in some way

benefited by the fact that immediately upon the expiration of the term of the demise, the lessor procured from the lessee a surrender and quit-claim of all remaining rights vested in him by the lease, and particularly by the clause giving an option to purchase. The rights of the mortgagees, whatever they were, were already vested in them, and could be in no way affected by any subsequent conveyance or release by their mortgagor. Nor are we able to see that the relations of the mortgagees to the lessor were in any respect different after the latter had purchased in the rights outstanding in the lessee than they were before. The case, so far as we can see, furnishes no room for the doctrine of merger in such way as to affect the rights or equities of the mortgagees, either beneficially or otherwise.

We are of the opinion that all rights, both legal and equitable, conveyed by the deed of trust, have terminated and ceased to exist. The estate for years has expired by lapse of time, and the equities based upon the option to purchase upon which the trustee and his beneficiary acquired a lien, were extinguished prior to the commencement of this suit, by the failure to elect to exercise the option, and the retracting of the option by the lessor. The deed of trust therefore had ceased to be operative as a security, but remains a mere cloud upon the title of the complainants.

The judgment of the Appellate Court, and the decree of the Superior court will both be reversed, and the cause will be remanded to the latter court with directions to enter a decree in accordance with the prayer of the bill.

*Judgment reversed.*