(No. 31325.

THE PEOPLE *ex rel.* L. A. Roan *et al.*, Appellants, *vs.*
HAROLD J. WILSON *et al.*, Appellees.

*Opinion filed January 18, 1950.*

CRAIG & CRAIG, of Mattoon, for appellants.

WILTON A. CARR, of Toledo, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cumberland County in a suit involving a complaint in *quo warranto* filed by the plaintiffs-appellants, ordering, adjudging and decreeing that the defendants do have judgment that their respective offices as members of the Board of Education of Community Unit District No. 77 of the counties of Cumberland and Coles in the State of Illinois are legally held by them and that said Community Unit District No. 77 is legally organized in all respects.

The facts are contained in the pleadings and in a stipulation entered into by the parties herein. It appears that a petition for leave to file a complaint for *quo warranto* was filed in the office of the clerk of the circuit court of Cumberland County on November 19, 1948, by the plaintiffs, Roan and Button, together with one Ozier and one Drake. An amended petition was then filed by the plaintiffs herein, Roan and Button, in the office of the clerk on December 7, 1948. The amended petition alleges that the plaintiffs are citizens within the purported boundaries of Community Unit School District No. 77 of the counties of Cumberland and Coles, and petitioned the court for leave to file a complaint in *quo warranto* on behalf of the People on their relation pursuant to the statute in such case made and provided. The petition alleges that both the Attorney General and State's Attorney, although requested, had refused to file the complaint. The petition then proceeds to set forth that, in pursuance of the provisions of sections 8-9 through and

including 8-14 of the School Code, certain territory was organized into Cumberland Community Unit School District No. 1 on April 17, 1948. A board of education for such district was elected May 15, 1948.

The petition further sets forth that an election was held July 31, 1948, forming the district known as Greenup Community Unit School District No. 4 of the county of Cumberland and that a board of education of Greenup Community Unit School District No. 4 was elected on August 21, 1948. The plaintiffs herein were elected members of the Board of Education of Greenup Community Unit School District No. 4 on the last-mentioned date and at that time assumed the duties of their office with other members of the Board of Education of the Greenup Community Unit District No. 4. The plaintiffs allege that they are still legally elected members of said board of education.

The petition further alleges that subsequent to the actions heretofore set forth and after the organizations of the districts aforesaid, a petition was filed August 4, 1948, with the county superintendent of schools to organize Community Unit Dstrict No. 77 of the counties of Cumberland and Coles, this district to include all of the lands in each of the two previously organized districts. The petition alleges the purported election of the defendants herein as members of the Board of Education of District No. 77.

The defendants, in their answer and plea of justification, deny they have wrongfully assumed and usurped the offices of members of the board of education and proceed to set out the filing of the petition for the organization of Community Unit District No. 77 and set out the statutory proceedings that were then followed in connection with the election for the organization of the new district and the election of the members of the board of education of the new district.

A reply was filed reiterating the position of the plaintiffs that the Community Unit District No. 77 is illegal and was never legally formed and incorporated because it could not be so legally formed or incorporated to include the territory of the two previously organized and formed districts, Cumberland Community Unit District No. 1 of the county of Cumberland and Greenup Community Unit District No. 4 of the county of Cumberland.

The stipulation entered into by the parties hereto indicates that there is no question but that Community Unit District No. 1 of the county of Cumberland and Greenup Community Unit District No. 4 of the county of Cumberland were legally organized and were valid districts prior to the organization of Community Unit District No. 77.

The question before this court for decison is whether or not Community Unit District No. 77 could be legally and properly formed under the statute, taking over the territory contained in the two community unit districts in being at the time of its inception, and thereby dissolve the two districts by reason of its organization.

The appeal here involves the question of the legal existence of Community Unit District No. 77 of the counties of Cumberland and Coles, thereby involving a franchise, and an appeal lies directly to this court. (*People ex rel. Simpson* v. *Funkhouser,* 385 Ill. 396.) The provisions of the School Code directly involved here are sections 9 through 13, inclusive, of article 8. (Ill. Rev. Stat. 1947, chap. 122, pars. 8-9 through 8-13.) These provisions embrace the formation of a community unit school district. In fact, the entire article is concerned with the formation of unit districts of several types.

At the time of the actions involved here, and prior to the amendment by the General Assembly in 1949, section 8-9 provided that upon receipt of a petition signed by 100 or more voters residing in any contiguous and compact territory having the population of not less than

2,000 persons and an equalized assessed valuation of not less than six million dollars, the county superintendent of schools of the county in which the territory, or the greater part, was situated shall order an election to be held for the purpose of voting for or against the proposition of establishing a community unit school district to maintain grades 1 to 12, inclusive. Sections 8-10 provided for voting precincts and ballots with the form of ballot set forth. Section 8-11 provided for the furnishing of election supplies, and 8-12 provided for the election of a board of education if the majority of votes cast at the election was in favor of the establishment of a community unit school district. The county superintendent was required to order the election to be held in 30 days for the purpose of selecting such a board for the new district. Section 8-13 provides, "Upon the organization of any territory into a community unit school district, all school districts, including high school districts, located within said territory, shall be automatically dissolved and the board of education of said community unit school district shall establish a school or schools best located to serve the pupils of the district with the program of studies extending through grades one to twelve inclusive." The section further provides: "If there is included within the territory so reorganized a part or parts of elementary districts or high school districts, said part or parts shall automatically be detached from such district or districts and become a part of said community unit school district." This section further states that within 30 days after such district has been established the county superintendent under whose direction the district was established shall make and file with the county clerk a map showing the territory of such new district.

The plaintiffs first present for our consideration the proposition that a municipal corporation cannot be established to include territory already organized into a mu-

nicipal corporation, exercising the same powers, jurisdiction and privileges. (*West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill. 392. *Maulding* v. *Skillet Fork River Outlet Union Drainage Dist.* 313 Ill. 216.) The application of the rules of these cases in the instant cause necessarily involves the construction of the first paragraph of section 8-13, which provides that upon the organization of any territory into a community unit school district all school districts including high school districts located within the terrritory shall be automatically dissolved. This in turn calls for a consideration of section 8-9 to determine whether or not Community Unit District No. 77 could legally have been petitioned for and voted upon after the formation of Community Unit District No. 1 and Community Unit District No. 4.

In arguing that Community Unit District No. 77 was improperly organized, the defendants cite the case of *People ex rel. Pfeiffer* v. *Morris,* 365 Ill. 470, where there was a petition in a community high school district that attempted to overlap a prior petition. The case is not determinative of the issue here. In the *Morris case,* two petitions, separate and distinct, were on file, whereas in the instant cause two unit districts had already been organized and were legally in existence at the time of filing a petition for the organization of Community Unit School District No. 77. Too, the *Morris case* was decided under the previous statute which, while similar in nature, did not involve all of the provisions contained in the instant act.

The primary aim of statutory construction is to ascertain the legislative intent by examining not only the language employed, but the evil to be remedied and the end to be obtained. *Schoellkopf* v. *DeVry,* 366 Ill. 39.) Rules of interpretation are resorted to for the purpose of resolving ambiguities, and the entire section and act must be read together and so construed as to make it

harmonious and consistent in all its parts. (*Wells Brothers Co. v. Industrial Com.* 285 Ill. 647.) This court is bound to give meaning to each word, clause and sentence. (*People ex rel. Cameron v. Flynn*, 265 Ill. 414.) The section must be interpreted according to its intent and meaning, and reasonably, so as to accomplish its general object. (*People ex rel. Akin v. Kipley*, 171 Ill. 44.) In interpreting statutes, words are presumed to be used in their ordinary meaning, and it is proper, in case of ambiguity, to consider the context to determine the meaning in which they are used. (*Board of Education v. Morgan*, 316 Ill. 143.) Further, it is the province of the legislature to enact the laws and that of the courts to construe them. (*People ex rel. Barrett v. Anderson*, 398 Ill. 480.) It is the province of the judiciary to construe the law and not to undertake to assume the power of the legislative branch of the State. (*People v. Commonwealth Edison Co.*, 367 Ill. 260.) Courts have no legislative powers and may not incorporate in a statute provisions not within the intention of the General Assembly as expressed in the statute itself. *First Nat. Bank v. Hahnemann Institutions*, 356 Ill. 366.

Section 8-9, as it read at the time of the actions complained of here, provided that upon receipt of a petition signed by the requisite number of voters in any contiguous and compact territory having the prescribed population and the prescribed assessed valuation of property, the county superintendent of schools shall order an election to be held. There is no limitation in this section, precluding the forming of a community unit district out of one or more existing community unit districts already organized under this provision of the act. The sections of the School Code, from 8-9 through 8-13, inclusive, are mandatory in nature. They provide certain prescribed acts which must be undertaken by the proper officials when certain demands are made upon them and there is no limitation to excuse their failure to act under any of these given

circumstances. The very fact that in 1949 the legislature amended the School Code in section 8-9 to read: "Upon the receipt of a petition signed by 200 or more voters residing in any contiguous and compact territory, no part of which is included within any community unit school district" is indicative of the attitude of the General Assembly toward this section. (Ill. Rev. Stat. 1949, chap. 122, par. 8-9.) It is obvious that the legislature knew that the very thing objected to by the plaintiffs here was possible under the plain meaning of the words contained in the section. Had it been as apparent as the plaintiffs contend that the section did not allow the action complained of here, the amendment of 1949 would have been unnecessary and worthless to add to, or detract from, the powers given by the act itself.

It is impossible to understand any plainer meaning than that given by the very words themselves, that an election must be called by the county superintendent of schools upon the requisite petition being filed with him. Under these circumstances, and where there is no limitation given, school districts could be formed incorporating portions of already incorporated community unit school districts, as was done in this particular cause. It is true that the amendment of 1949 precludes such action in the future. This in turn answers the arguments of the plaintiffs to the effect that no stability will exist, if we hold other than that the act should be construed prior to the amendment of 1949 as it must be construed now that the amendment of 1949 has been added to it.

The question now before us is whether or not any effect is to be given to the provision of section 8-13 which provides that upon the incorporation of any school district all existing school districts shall be automatically dissolved.

The plaintiffs herein contend for the narrow construction that these words only refer to such school districts

as ·were in existence at the time the act setting up and providing for community unit school districts was passed. With this contention we cannot agree. It narrows the scope of the act and restricts the plain language to a point which distorts its meaning. The section provides that all school districts within the territory shall be automatically dissolved. There is no limitation as to what type of school district. The word "all" is not capable of many definitions. "All" is synonymous with "every," and the act provides that all school districts shall be dissolved, which would include community unit school districts as well as those within the confines of the territory at the time the act was passed.

This holding is in conformity. with the law as it existed at the time the act was put into effect. The legislature has always adhered to the policy of permitting the people, by enabling legislation, to establish their own school districts which will best serve them; this ·to be done against a background of local needs, desires and conditions, and caters to the concept of local self-government. (*People* v. *Deathcrage*, 401 Ill. 25.) It is to be noted that the new school district, Unit No. 77, incorporates two previous school districts. The facts contained in the stipulation involved here indicate that the large district formed by No. 77 is a proper district and that the previous districts did not have the requisite number of students recommended by authorities. It is not necessary to discuss at great length the intent or the efforts of the General Assembly to provide better schools within the State. It is sufficient to say that the theory behind the act in question is to build up the unit districts and school districts throughout the State to provide for maximum efficiency with lowest cost. Insofar as this particular case is concerned, Unit District No. 77 satisfies this intent.

That the action of the legislature as we have construed the act in question is proper is without question. There

is no constitutional limit placed upon the rights and powers of the legislature with reference to the formation of school districts or as to the agencies the State shall adopt for providing for free schools. (*People ex rel. Brockamp* v. *Chicago and Illinois Midland Railway Co.* 256 Ill. 488.) In *Husser* v. *Fouth,* 386 Ill. 188, we said: "Ever since there has been a school law in Illinois the fundamental principle for the establishment of the school districts has been that they should be such as the convenience and wishes of a majority of the inhabitants require. The law has provided for the ascertainment of such wishes and convenience, either by petition signed by a majority or more of the legal voters or by elections held for the purpose. It is not the exercise of either the legislative, executive or judicial power for the inhabitants of any territory to avail themselves of the privilege of organizing a school district in accordance with the authority conferred by a statute which specifies with particularity the rules and conditions under which the organizations may be made."

The statute here sets forth with certainty the steps to be taken in organizing a Community Unit School District. That these were followed in organizing District No. 77 has been stipulated to and there is no limitation in the statute to prevent the majority of people in the area involved from forming a single unit district to replace the two formerly in existence. We cannot stretch the language of section 8-13 to embrace the definition desired by the plaintiffs herein. The language of the statute is definite and clear in its meaning. It is free from ambiguity and we can see no necessity nor can we find authority for resort to statutory construction to solve its meaning. *Sup* v. *Cervenka,* 331 Ill. 459.

For the reasons set forth herein, the judgment of the circuit court of Cumberland County is affirmed.

*Judgment affirmed.*