Conlon-Moore Corporation, Appellee, v. Roy F. Cummins, Director of the Department of Labor of the State of Illinois, Appellant.

Gen. No. 48,109.

First District, First Division.

December 29, 1960.

Rehearing denied January 19, 1961.

Grenville Beardsley, Attorney General of the State of Illinois (William C. Wines, Raymond S. Sarnow, A. Zola Groves and Philip G. Bixler, Assistant Attorneys General, of counsel) for appellant.

Dorfman, DeKoven & Cohen, of Chicago (Seymour Cohen and Richard W. Laner, of counsel) for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an appeal by the defendant, the Director of the Department of Labor of the State of Illinois, from an adverse declaratory judgment decree against him, "That the word 'wages' as that term is used in Chapter 48, Sections 39g–39m, Ill. Rev. Stats., a penal statute, sometimes known as the 'Wage Payment Act of Illinois,' does not include the item of vacation pay provided for in the Collective Bargaining Agreement, known as the Conference Agreement."

Plaintiff, Conlon-Moore Corporation, permanently terminated production in its plant in Joliet, Illinois, in October, 1957. Subsequently, it refused to pay employee claims for "vacation pay," which were based upon a collective bargaining agreement, for any period of employment after May 1, 1957. After an informal hearing held by the Wage Claim Division, the Director notified plaintiff to make payment of the claims within 5 days, and that failure so to do would result in "enforcement as provided by law in such cases." Plaintiff then filed the instant declaratory judgment action, seeking a decree that the Act "does not apply to payments of vacation pay or claims therefor," and to restrain any steps to enforce the Act, civil or criminal, for the payment of vacation pay.

By stipulation, it was agreed that a "real controversy exists," because of impending prosecution under

the "Wage Payment Act," unless plaintiff complied with the order of the defendant to make payment of amounts claimed by plaintiff's employees; that plaintiff was a party to a collective bargaining agreement, in which Article V, entitled "Vacations," contained conditions and eligibility requirements for vacations and vacation pay, that plaintiff has refused to pay vacation pay for any period worked subsequent to May 1, 1957; that each "employee received his regular pay or 'wages' for each day prior to his permanent lay off"; that most of the employees were "let go" in September or October of 1957; that the amounts of pay for the vacations were determined as to each employee on the basis of a percentage of his "straight time earnings excluding holiday pay, vacation pay, and premium pay"; and that there are 91 employee claims for vacation pay, totalling in excess of $8150.

Defendant contends the court erred in not construing the collective bargaining agreement out of which the "real controversy" arose; in not admitting evidence as to the intent of the parties as to the term "vacation pay"; and in holding that "vacation pay" is not "wages" within the meaning of the Wage Payment Act. Defendant also contends "vacation pay" should not be considered as in the general category of "fringe benefits" definitions or decisions, "which have none of the indicia of 'wages,' and are not even uncommonly understood to be 'wages.'"

The sole question for our determination is whether the term "wages," as used in the statute (Ch. 48, §§ 39g–39m, Ill. Rev. Stat. 1957), "embraces within its meaning and purpose the vacation pay provided for in the Conference Agreement contained in Exhibit A to the Amended Complaint." The basic question does not require an extended discussion of the numerous cases and authorities cited by both parties.

■ We agree that in the absence of a contrary statutory definition, words used in a statute are used in

their common dictionary meaning (Bowes v. City of Chicago, 3 Ill. 2d 175, 201, 120 N.E.2d 15 (1954)); or in "their popularly understood meaning" (Bowman v. Armour & Co., 17 Ill. 2d 43, 52, 160 N.E.2d 753 (1959)); that the dictionary definition of "wages" is "Pay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salary or fees" (Webster's New International Dictionary, 2nd Ed., Unabridged, 1958, p. 2863); and that "In a narrow and popular sense, and as used in ordinary language, and in its ordinary acceptation, the word 'wages' is usually restricted to sums paid as hire or reward to artisans, mechanics, . . . and laborers employed in manufacturies, . . . and other manual occupations, and usually employed to distinguish the sums paid to persons hired to perform manual labor, skilled or unskilled, paid at stated times, and measured by the day, week, month, or season." 92 C. J. S., p. 1037.

 Collective bargaining agreements have been so construed that "vacation pay is included in the term wages and therefore arbitrable" (Brampton Woolen Co. v. Local Union 112, 95 N. H. 255, 61 A.2d 796, 797 (1948)); in a number of bankruptcy cases "vacation pay" has been included in the priority given to "wage" claims, and it has been said "a vacation with pay is in effect additional wages" (In re Wil-Low Cafeterias, 111 F.2d 429, 432 (1940); so, too, as with severance pay (In re Public Ledger, Inc., 161 F.2d 762, 767 (1947); "the primary aim of statutory construction is to ascertain the legislative intent by examining not only the language employed, but the evil to be remedied and the end to be obtained. . . . Further, it is the province of the legislature to enact the laws and that of the courts to construe them" (People ex rel. Roan v. Wilson, 405 Ill. 122, 127, 90 N.E.2d 224 (1950).) Where words having more than one meaning are used in a statute, they should be given

that meaning which comports with the usual and popular meaning attached to the words employed (Revzan v. Nudelman, 370 Ill. 180, 184, 18 N.E.2d 219 (1938).) A statute will be construed as prospective in character and operation (Blough v. Ekstrom, 14 Ill. App. 2d 153, 164, 144 N.E.2d 436 (1957).) In an action for breach of an alleged employment contract and for vacation pay, this court said there was no discretion in the defendant, once plaintiff had earned the vacation, to decide whether plaintiff should have it. Cummings v. Chicago, A. & E. Ry. Co., 348 Ill. App. 537, 542, 109 N.E.2d 378 (1952).

■ It is not disputed that the Wage Payment Act is a penal statute. Section 5 makes a wilful refusal to pay wages, or a false denial that the same are due, a misdemeanor with a fine up to $200 to be imposed for each offense. We believe that the purpose of the Act is to insure prompt and full payment of wages due workers at the time of separation from employment, either by discharge, layoff or quitting.

In 1937, when the Act was enacted, few collective bargaining contracts provided for vacation pay (Monthly Labor Review, November 1940, p. 1070), and before the 1940's "fringe benefits," such as paid vacations, health insurance, pensions, life insurance and paid holidays, were hardly ever heard of in industry (Harvard Business Review, September-October 1954, pp. 35–44). From this, it seems obvious that in 1937, the Illinois Legislature intended to restrict the term "wages" to apply to the basic rate of pay, and we find nothing in the Act to indicate that the term was to be expanded to include collective bargaining agreement benefits.

■■ Courts may not incorporate in a statute, provisions not within the intention of the General Assembly, as expressed in the statute itself (People ex rel. Roan v. Wilson, 405 Ill. 122, 127, 90 N.E.2d 224

(1950)), even though penal laws are not to be construed so strictly as to defeat the obvious intention of the Legislature (People v. Kirkrand, 397 Ill. 588, 590, 74 N.E.2d 813 (1947)). "A criminal statute must be strictly limited in its application to such objects as are obviously within its terms." The Pullman Co. v. Cummins, 10 Ill. 2d 454, 463, 140 N.E.2d 713 (1957).

The Pullman case opinion quotes at length from People v. Vetri, 309 N.Y. 401, 131 N.E.2d 568 (1955). This case involved a collective bargaining contract, which provided for vacation pay. While the agreement was in effect, the defendant discontinued business. He made payments required under the agreement except for the accrued vacations of six of his employees, ranging from four to fourteen days. Upon the complaint of these employees, the defendant was convicted of a violation of the Labor Law, in that he failed to pay the wages due the complainants "for various periods during the past year." In deciding that the word "wages," as used in the New York Labor Law, was not intended to include vacation pay or other fringe benefits, but was to be restricted to the basic rate of pay, the court said (at p. 408):

> "The law affords wage earners ample civil remedies for the purpose of assuring them full payment of all additional benefits accruing to them under their contract of employment. If the Legislature desires to provide that failure to pay vacation moneys or other benefits due an employee be deemed criminal, this purpose can readily be effected by appropriate amendment to the Labor Law or to the Penal Law. Under the language of these statutes as now written, defendant was guilty of no criminal act."

██ We believe this statement applies to the instant case. We are not persuaded that "vacation pay"

should not be grouped with "fringe benefits" when this penal act is sought to be used for enforcement or payment. If the term "wages" is to be expanded to include collective bargaining agreement "vacation pay," it is a matter for legislative action.

Considering our disposition of the basic question, we believe the trial court was correct in rejecting defendant's offer of proof as to what the parties to the agreement intended by the term "vacation pay," and in not construing the collective bargaining agreement. This declaratory judgment action is to construe a statute and not a contract, and evidence concerning the intent of the collective bargaining parties is not admissible to determine legislative intent. The statute itself is the best means of determining its purpose and its terms.

We do not believe that the Legislature intended that the Wage Payment Act be used to include the interpretation and enforcement of employment and collective bargaining contracts. We conclude that the term "wages," as used in Chapter 48, sections 39g–39m, Illinois Revised Statutes, does not include "vacation pay" and other "fringe benefits" of employment. Therefore, the judgment and decree appealed from is hereby affirmed.

Affirmed.

KILEY, P. J. and BURMAN, J., concur.