JONATHAN MICHAEL COX, Plaintiff-Appellee, *v.* HILDRED GRANT *et al.,* Defendants.—(MAX H. WILSON, Defendant-Appellant.)

Fifth District    No. 77-253

Opinion filed March 7, 1978.

Charles W. Phillips, of Harrisburg, for appellant.

Conger & Elliott, of Carmi, and Campbell, Furnall, Moore & Jacobsen, of Mt. Vernon, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This appeal arises from an action in interpleader instituted in the Circuit Court of Gallatin County by Jonathan M. Cox as lessee under a certain farm lease agreement seeking a determination of the rent entitlements of three devisees of the subject property under the will of the lessor, Anabel Wilson; praying that the farm lease be declared valid, and for other relief. One of the devisees, Max H. Wilson, by his answer and cross-complaint prayed that the court declare the lease void as to its prospective term on the premise that Cox's option to terminate the lease at the end of any year rendered the lease voidable for lack of mutuality and that he be placed in possession of that part of the property devised to him. After a hearing, the trial court entered an order declaring the lease to be a valid and binding agreement, dismissing the cross-complaint of Max H. Wilson, and declaring that the annual cash rent payment under the lease was to be divided equally among the three devisees. Max H. Wilson appeals from that order and raises the question of whether the unilateral option to terminate the lease renders the lease voidable by the lessor on the grounds of lack of mutuality.

The facts may be briefly stated. Luther and Anabel Wilson were the owners of a 390-acre farm located in Gallatin County which they leased to

area farmers for several years prior to their deaths. In 1971, the Wilsons leased their acreage to Bricem Cox, Jonathan's father, for a term of five years on a cash rent basis; however, Bricem Cox did not actually work the property and the lease was handled as if it were his son's. After farming the property in the first year of the five year lease, Jonathan Cox told the Wilsons that because of the great amount of work which was needed to be done on the property he would have to spend large sums of money in the future and, therefore, was desirous of a longer lease term. After some discussion between the parties and an attorney, paid by the Wilsons, it was agreed that the then present lease would be extended an additional 10 years to arrive at a 14-year term. Thereafter, on October 18, 1972, a 14-year lease agreement was executed by the Wilsons and Jonathan M. Cox whereby Cox was to pay an annual cash rent in the amount of $11,700, computed at the rate of $30 per acre for 390 acres of clear land, in advance on January 1, of each year commencing on January 1, 1973. Under the terms of the lease, Cox was given the option to terminate the agreement at the end of any crop year (defined as ending December 31 of each year) to be exercised by his serving written notice of such termination on the lessors at least 90 days prior to the end of any crop year.

On January 17, 1975, Anabel Wilson died, her husband having predeceased her, leaving a will devising the farm property in equal shares to Hildred Grant, Max H. Wilson and James A. Wilson, severally, except as to 49 acres in which they became tenants in common. On January 1, 1976, Cox tendered a check for the annual rent to Anabel Wilson's executor, Hildred Grant. Upon her returning the uncashed check to him two months later, Jonathan M. Cox brought the instant cause.

On appeal Max H. Wilson contends, relying on *Hodorowicz v. Szulc*, 16 Ill. App. 2d 317, 147 N.E.2d 887 (1st Dist. 1958), that the unilateral right in a party to terminate a contract renders the contract voidable for lack of mutuality of obligation. We find the case inapposite. The contract in question in *Hodorowicz* was an agreement to sell real estate, not enforceable at the time of its execution but conditioned on the happening of a future event. When the contingency ultimately occurred the contract had lost its binding power upon the seller and, therefore, there was never a mutually binding and enforceable contract between the parties. The court held that because there were no mutual obligations in the contract enforceable against both of the parties at the time of the alleged breach it could not be enforced against the buyer. The contract embodied in the lease in the instant cause is an entire one, contrary to Wilson's assertion that is in reality a series of one year contracts; and it is our opinion that the same consideration which supports the other provisions of the lease will support the provision that gives Cox the right to terminate the lease at the end of each crop year.

■■  Mutuality of obligation means that both parties to an agreement are bound or neither is bound; that is, each has made a promise to the other and is therefore an obligor and under a duty to the other contracting party (1A Corbin, Contracts §152 (1963)). It is not necessary that a contract be reciprocal in every separate obligation and it is sufficient that it legally obligates both parties to abide by and perform its conditions. (*Hall v. Gruesen*, 22 Ill. App. 2d 465, 16 N.E.2d 345 (1st Dist. 1959); *Industrial Natural Gas Co. v. Sunflower Natural Gasoline Co.*, 330 Ill. App. 343, 71 N.E.2d 199 (4th Dist. 1947); 1A Corbin, Contracts §161 (1963).) Thus, in determining the validity of a contract the focus is not upon the equality of obligations, but upon the mutuality of consideration. The doctrine of mutuality of obligation appears, therefore, to be merely one aspect of the general rule that mutual promises constitute consideration for each other. In this regard, an option agreement to convey without a corresponding obligation or covenant to purchase will be specifically enforced if made upon sufficient consideration (*Hayes v. O'Brien*, 149 Ill. 403 (1894)), and the agreement to pay rent is generally sufficient consideration to support the option as well as the right of occupancy under the lease. *Cities Service Oil Co. v. Viering*, 404 Ill. 538, 89 N.E.2d 392 (1949); *Garlick v. Imgruet*, 340 Ill. 136, 172 N.E. 164 (1930); *Stanwood v. Kuhn*, 132 Ill. App. 466 (1907).

■■  The terms of a written contract bind the parties as to all its provisions including the manner in which the term granted may be terminated. (*McCauley v. Coe*, 150 Ill. 311 (1894); *Weber v. American Posting Service*, 197 Ill. App. 500 (1st Dist. 1916).) Concerning the propriety of a provision in a contract giving a party the right to terminate the agreement before the end of its term, our supreme court in *Brown v. Federal Life Insurance Co.*, 353 Ill. 541, 545, 187 N.E. 484, 486 (1933), stated:

> "Parties to a contract may cancel it at any time by mutual consent, and there is no reason why they may not agree in advance that the contract made by them shall cease to be binding at any time, at the option of either or both of them, if there is, in fact, a valid contract made by them."

More specifically, a lease may provide for its termination before the expiration of its fixed term at the option of either of the parties to the lease agreement; such provisions must be construed in accordance with the agreement, and the option must be exercised in the manner provided in the lease. *Associated Cotton Shops, Inc. v. Evergreen Park Shopping Plaza*, 27 Ill. App. 2d 467, 170 N.E.2d 35 (1st Dist. 1960); 51c C.J.S. *Landlord & Tenant* §91 (1968).

We believe our decision is in accord with recognized authority. Thus Professor Corbin states: "* * * [a] provision that one party shall have the

power to cancel by notice given for some stated period, * * * should never be held * * * invalid thereby for lack of 'mutuality' or for lack of consideration. * * * The party in whom the power has been reserved has made a real 'promise, one that in terms purports to control his action during the specified period of notice.' " (1A Corbin, Contracts §164 (1963).) Options or powers to cancel are denominated, in the case of leases, "terminable tenancies" in the Restatement of the Law of Property. They are assumed valid and binding without any discussion or suggestion of invalidity. (Restatement (Second) of Property, Landlord & Tenant §§1.7, 2.5 (1977).)

■■ As we have already noted, a contract does not lack mutuality merely because its obligations appear unequal or because every obligation or right is not met by an equivalent counterobligation or right in the other party. When entering a lease agreement, a tenant may be willing to pay a higher rent or to expend substantial sums for capital improvements for a number of years provided the landlord will give him the power to terminate the agreement at a certain time. It is not to be presumed that the landlord would agree to such a concession unless he had received consideration in the terms of lease agreement. In the instant cause, the evidence shows that Cox was unwilling to spend great sums of money for necessary major improvements to the property without the security of a long-term lease and, in fact, Cox spent $46,000 for such improvements from 1971 to 1975. On the other hand, because of the substantial problems with the land and because of the uncertainty of future farm prices, Cox wanted the opportunity to terminate the agreement at the end of any crop year. As we read the lease in question, we find ample consideration moving from each party to the other to support their respective obligations. The agreement to pay rent and the yearly rental payments by Cox constituted adequate consideration for the provision in the lease giving him the power to terminate the agreement at the end of any crop year after due notice to the lessor. The lease, therefore, is not lacking in mutuality and is valid.

For all of the foregoing reasons, the order of the Circuit Court of Gallatin County is affirmed.

Affirmed.

JONES and G. J. MORAN, JJ., concur.