Allan W. RAKOS, Plaintiff,

v.

SKYTEL CORP., a Delaware
corporation, Defendant.

No. 95 C 2704.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 24, 1996.

Ray G. Rezner, Mark Scott Bernstein, Barack, Ferrazzano, Kirschbaum & Perlman, Chicago, IL, for Allan W. Rakos.

Daniel E. Reidy, Dean M. Jeske, Jones, Day, Reavis & Pogue, Chicago, IL, for Sky-Tel Corp.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff, Allan W. Rakos, filed a three count complaint against defendant, SkyTel Corp., alleging a breach of employment contract (Count I); a violation of the Illinois Wage Payment and Collection Act (Count II); and recovery of attorneys' fees under the Illinois Attorneys Fees In Wage Actions Act (Count III). Defendant has filed a motion for summary judgment on all three counts pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has also filed a motion for summary judgment on Count I pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion for summary judgment on Count I is DENIED and defendant's motion for summary judgment on all three counts is GRANTED.

## STATEMENT OF FACTS [1]

Defendant, SkyTel Corp., is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in Washington, D.C. Defendant sells various products and services related to wireless communications, including pagers and paging services. Plaintiff, Allan W. Rakos, is a former employee of defendant who formerly resided in Chicago, Illinois and now resides in Oregon. Defendant hired plaintiff on October 29, 1993 as a Major Account Executive (MAE) with a base annual salary of $40,-000.00. Plaintiff was eligible for incentive compensation pursuant to an incentive compensation plan, the Major Account Executive Compensation Plan (Plan).

Defendant does not negotiate the terms of its incentive plans with its employees. On January 10, 1994, plaintiff received a copy of the 1994 Plan and signed the Plan. Employees of defendant are not eligible to receive incentive compensation unless they acknowledge receiving the Plan. Plaintiff's manager met and discussed the Plan in great detail with plaintiff and other MAE's, followed by a question and answer period. Under the Plan, sales were credited to MAE's based on the net amount of new sales arising from the specific accounts to which the MAE's were assigned. In the Plan, however, management of defendant reserved the rights to change, modify, suspend, or discontinue the incentive plan at any time during the year without prior notice. It also stated that the Vice President of Sales could review unique large orders to determine, at his or her discretion, whether the order presented excessive credit in relation to the effort of the participant and that defendant could with-

---

1. The following statement of facts comes from both parties' Local Rule 12(M) and (N) state-ments of material facts and accompanying exhibits.

hold part or all of the credit if such a determination was made. The Plan contained a provision that nothing in the Plan should be construed as a guarantee of employment for anyone for any fixed time. Plaintiff also signed a Confidentiality Agreement and a Non–Competition Agreement before he was hired.

Sharon Smiley was hired by defendant as a national account manager on October 1, 1993. Two accounts specifically assigned to Smiley were Sears, Roebuck & Co. and Advantis. Advantis is a New York general partnership that acts as an agent for certain purposes on behalf of International Business Machines Corporation and Sears. Plaintiff was also assigned to the Advantis account in November 1993.

Smiley had first solicited Advantis in October 1993, before plaintiff was hired by defendant. She previously had worked at a company where Advantis was a client and thus had prior dealings with people from Advantis. Plaintiff claims that he and Smiley began working on the Advantis account together in November 1993. Defendant disputes this and states that plaintiff is unable to identify one person at Advantis whom he contacted before attending an April 1994 meeting with Smiley. After several calls, Smiley arranged a meeting with Advantis representatives in April 1994 which plaintiff and Smiley attended to make a presentation on defendant's services. This was plaintiff's only face-to-face meeting with representatives of Advantis, although he claims to have spoken with representatives of Advantis on numerous other occasions. Plaintiff claims that Smiley did not keep him apprised of further meetings with Advantis or direct him to participate in responding to negotiations with Advantis, which unfairly excluded him from working on the sale. Defendant contends that plaintiff's only involvement with the Advantis sale was attending the one sales presentation with Smiley and objects to any implication that it had an obligation to keep plaintiff apprised of further meetings with Advantis, since plaintiff was merely one of several employees initially assigned to the account by defendant and it was not plaintiff's exclusive account.

On April 20, 1994, George Taylor of Advantis sent Smiley a Request for Information (RFI) letter requesting information about defendant's pricing and stating that Advantis would need approximately 25,000 pagers. Advantis rejected defendant's first response to the RFI because the price offered was too high. Shortly thereafter, Raymond O'Brien, the Senior Vice President of Sales and Marketing for defendant, met with George Taylor at Advantis' Schaumburg, Illinois offices where he was told that defendant's pricing would have to be deeply discounted to get the Advantis contract. Defendant claims that following his meeting with Taylor, O'Brien believed that a sale to Advantis would be the result of competitive bidding since the RFI was sent to numerous paging companies, there was no longstanding relationship between anyone at Advantis and defendant, the price necessary to make a sale would have to be deeply discounted to an extent unprecedented at defendant, and the sale would be unlike normal sales in that it would have to involve defendant's top executives resulting in a truly company-wide effort and not the effort of just a few individual salespeople. Therefore, as they were leaving the meeting with Taylor, O'Brien informed Smiley and Bob Sabo, defendant's regional director of national accounts, that the Advantis sale, if it happened, would be taken off the compensation plans.

Upon returning to Washington, D.C., O'Brien sent a memo to Bernard Puckett, president of MTel, defendant's parent company, and John Palmer, chairman of MTel, indicating the price needed to contend for the Advantis contract. Puckett approved the price and on June 2, 1994 O'Brien authorized Sabo and Smiley to convey the price to Advantis. O'Brien also reiterated in an e-mail message that the Advantis sale would be taken off the 1994 incentive compensation plans. He believed that the deep discount price given to Advantis would lead to employees receiving excessive bonuses in relation to the sale as calculated under the Plan. O'Brien did not inquire about the work performed specifically by plaintiff before determining that employees would not be paid according to the Plan for the Advantis sale.

Defendant, however, disputes the implication that O'Brien did not know what work had been done to solicit the Advantis sale prior to his determination to take it off the Plan.

An agreement was reached between defendant and Advantis on August 31, 1994 for the use of 20,859 pagers at $4.00 per month. Plaintiff participated in placing units with end users under the contract. Plaintiff was paid $83,436.00 for the Advantis sale. This payment was not calculated according to the Plan. In March 1995, plaintiff voluntarily resigned from defendant. At that time he was paid for all unused sick and vacation time.

### STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

### ANALYSIS

I. *Breach of Employment Contract (Count I)*

In Count I of his complaint, plaintiff alleges that defendant breached an employment contract with him which was in the form of the Plan. Plaintiff maintains that defendant breached the contract by refusing to pay him the amounts agreed to under the Plan for the Advantis sale. Whether the Plan created an enforceable employment contract is governed by the principles of contract formation set forth in *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987). In order to find that a document is an employment contract, a three-part test must be met: (1) the document must contain language clear enough that an employee would reasonably believe that an offer had been made; (2) the document must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee accepts the offer by commencing or continuing work. *Id.* The plaintiff's subjective belief is not to be considered because the *Duldulao* factors are to be evaluated under an objective standard. *Evans v. Gurnee Inns, Inc.*, 268 Ill. App.3d 1098, 206 Ill.Dec. 551, 554–55, 645 N.E.2d 556, 559–60 (1st Dist.1994).

Plaintiff argues that he is an employee at will and therefore has enforceable contract rights. While plaintiff may be considered an employee at will, he is not seeking enforcement of a general contract right applicable to employees at will. Plaintiff is specifically seeking enforcement of the Plan. In order to succeed on his claim for recovery of bonus commissions for the Advantis sale, he must show that the Plan was an enforceable employment contract, that it granted him a right to the commissions, and that defendant breached this right.

The Plan, however, did not create an enforceable contract as a matter of law because it did not contain a clear right to bonus commissions. Defendant clearly retained the right to modify or cancel the Plan at any time without prior notice. Such a statement is an effective disclaimer to negate any possible promissory intent. *Moore v. Illinois Bell Tel. Co.*, 155 Ill.App.3d 781, 108 Ill.Dec. 358, 508 N.E.2d 519 (2d Dist.1987). Plaintiff argues that this statement was not conspicuous enough to be an effective disclaimer. This

language, however, is set off under a separate heading entitled "VII. Modifications, Adjustments, Corrections, Movement of Services to Other Channels, and Transfer of Positions." The statement is contained in the very first paragraph under this heading. The statement goes on to say that "[n]othing in the Plan shall be construed as a guarantee of employment for anyone for any fixed time." This is an explicit statement that the Plan was not to be considered as a promise of employment to plaintiff. Plaintiff reviewed the Plan and attended a meeting where his manager explained the Plan and provided opportunities for questions. There is not a material question of fact as to whether the statements were conspicuous. Furthermore, the Plan states that the "Vice President of Sales may review unique large orders to determine, at his or her discretion, whether the order represents excessive credit in relation to the effort of the participant. If such determination is made, the company may withhold part or all of the credit for bonus purposes." This statement emphasizes that an employee does not have a right to a bonus under the Plan since the Vice President of Sales could withhold the bonus at his or her discretion.

Plaintiff claims that the language defendant cites conflicts with the mandatory language in the Plan such as a bonus "will" be paid based on performance. Plaintiff states that the dispute between this type of language and the language defendant claims constitutes a disclaimer means that the ambiguity must be left to be decided by the trier of fact. There is no conflict in the language of the Plan. The Plan in its entirety must be analyzed and it merely says that an employee will be paid bonuses unless defendant decides otherwise. Therefore, there is no firm offer or entitlement to a bonus.

This case is similar to *Grottkau v. Sky Climber, Inc.*, No. 93 C 6277, 1995 WL 32611 (N.D.Ill. Jan.26, 1995). In *Grottkau*, the court granted summary judgment on a breach of contract count by finding that the Incentive Plan at issue did not create an enforceable contract right as a matter of law because it did not contain a clear promise of a bonus. *Grottkau*, 1995 WL 32611, at *21.

Although the Incentive Plan contained language such as "will" with respect to payment of commissions, it also stated at the end that the company reserved the right to modify or cancel the incentive program at any time. The court said "[a]n employee could not reasonably believe that a bonus offer had been extended where [defendant] had the right and discretion to cancel the entire program at any time." *Grottkau*, 1995 WL 32611, at *21. In the present case, the Plan reserved to defendant the right and discretion to cancel the entire program at any time. Therefore, no contractual right to a bonus was created by the Plan.

Plaintiff claims that reserving the right to cancel the Plan does not mean that a contract was not formed. He cites *Cox v. Grant*, 57 Ill.App.3d 922, 15 Ill.Dec. 474, 373 N.E.2d 820 (5th Dist.1978), for this proposition. The court in *Cox*, however, was dealing with the question of whether mutuality of consideration had been satisfied to constitute an enforceable contract. *Cox*, 57 Ill.App.3d at 925–26, 15 Ill.Dec. at 476, 373 N.E.2d at 822. The court stated that mutuality of consideration in the formation of a contract may be satisfied even if a party has the power to cancel the agreement by notice. *Id.* The issue of consideration, however, is not raised in the present case. The question in the present case is not whether both parties provided mutual consideration, but whether language in the Plan was firm enough to even constitute an offer of a right to bonus compensations to plaintiff so as to be an enforceable contract. Because the Plan reserved for defendant the right and discretion to cancel the Plan at any time for any reason, it did not create an offer and thus it did not create an enforceable contract right to a bonus.

Plaintiff argues that defendant admitted in its answer to his complaint that defendant agreed to pay plaintiff according to the Plan. Therefore, he claims that defendant is obligated to pay plaintiff his commission for the Advantis sale as calculated under the Plan. While defendant may have admitted that plaintiff could be paid bonuses according to the Plan, it does end the inquiry of this court. Plaintiff may indeed have been subject to the

Plan, but the Plan must be analyzed by examining all of its contents. The Plan explicitly stated that defendant could change, modify, suspend, or discontinue the incentive plan at any time without prior notice and that the Vice President reserved the right to exercise discretion and take certain sales off the Plan. Since defendant had the authority to stop payments of commissions, an employee of defendant could not have had a right to commissions.

■ Even if the Plan was considered to be an employment contract, defendant did not breach the Plan and therefore plaintiff cannot maintain a cause of action for breach of contract.[2] The Plan clearly states that the "Vice President of Sales may review unique large orders to determine, at his discretion, whether the order represents excessive credit in relation to the effort of the participant." Defendant states O'Brien, the Senior Vice President of Sales and Marketing, knew from meeting with representatives from Advantis that the Advantis sale would be the largest in its history, and that the sale was unique because defendant sold the products and services to Advantis at an unprecedented heavily discounted price, was the result of competitive bidding from an RFI that was sent to numerous paging companies, was not the work of the Advantis sales team, there was no longstanding relationship between anyone at defendant and Advantis, and the sale would be unlike normal sales in that it would involve top executives resulting in a company-wide effort and not the effort of just a few individual salespeople. O'Brien thus exercised his discretion to determine that defendant's employees would not be paid bonuses for the Advantis sale according to the Plan.

Plaintiff, however, claims that O'Brien did not make the requisite determinations under the Plan to justify his decision to take the Advantis sale off the Plan. Specifically, he states that defendant did not weigh the facts about the efforts required for the sale nor did it consider plaintiff's performance in particular. The Plan says that the Vice President may review unique large orders to determine whether the order represents excessive credit in relation to the effort of the participant. The sale to Advantis was definitely a unique large order. O'Brien was entitled under the Plan, upon reviewing all of the information to determine that the Advantis sale would involve a company-wide effort and not the particular efforts of select salespeople, to exercise his discretion and remove the sale from the Plan. O'Brien determined that excessive credit would occur if employees were paid under the Plan's calculations due to the heavily discounted price given to Advantis.

Plaintiff argues that he had to supply the paging units after the Advantis sale occurred and that he spent time and effort in effecting the sale. Plaintiff, however, was paid an annual salary that covered his daily duties. Furthermore, he was well compensated for his work on the Advantis sale in the amount of $83,436.00, even though the sale was taken off the Plan. Plaintiff was fully aware that under the Plan the Vice President of Sales could exercise discretion and remove sales from the Plan. O'Brien, as Senior Vice President of Sales and Marketing, reviewed the circumstances of the Advantis sale and thought, with the grant of complete discretion, that the sale should not be subject to the Plan. Therefore, even if the Plan could be considered a contract, there was no breach by defendant.

■ Plaintiff further argues that O'Brien did not properly exercise his discretion because he breached the implied covenant of good faith and fair dealing recognized by Illinois law. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). The implied covenant of good faith and fair dealing requires that a party exercise discretion reasonably and with proper motive and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable

**2.** Plaintiff claims that defendant admitted that the Plan was an enforceable contract by arguing in the alternative in its briefs. Plaintiff misunderstands the intent of such arguments. As the court is doing here and indeed plaintiff did in his briefs, defendant merely argued that it believed the Plan was not an enforceable contract, but if the court deemed that it was, arguing in the alternative, defendant did not commit a breach. Such an analysis is not inconsistent. The court does not want plaintiff to also misconstrue its opinion when it presents the same analysis.

expectations of the parties. *Id.* Plaintiff has not specifically alleged a breach of the covenant in his complaint.

Plaintiff argues in his brief that defendant exercised its discretion for an improper motive in removing Advantis sale commissions from the Plan. He states that he was not paid because the price was deeply discounted and defendant thought it would lose money on the sale. A claim of a breach of good faith requires that an exercise of discretion be out of step with the expectations of the parties. *Id.* at 1444. In the present case, plaintiff was informed of the terms of the Plan. He knew that the Vice President could exercise his or her discretion to remove unique sales. As stated above, O'Brien employed the facts surrounding the Advantis sale and properly utilized his discretion to remove the sale from the Plan. The action of defendant did not diverge from the expectations of the parties, therefore there was no breach of the covenant of good faith.

Plaintiff received all compensation owed to him at the time he resigned from defendant. He is not entitled to commissions under the Plan. Accordingly, plaintiff's motion for summary judgment on Count I of plaintiff's complaint must be denied and defendant's motion for summary judgment on Count I of plaintiff's complaint must be granted.

## II. *Wage Payment and Collection Act (Count II)*

■ Count II of plaintiff's complaint alleges that defendant is in violation of the Illinois Wage Payment and Collection Act (Collection Act), 820 ILCS 115/1 et seq., since it has failed to pay him the commission he would have received had the Advantis sale not been taken off the Plan. The Collection Act regulates wage payment and is primarily concerned with the prompt and full payment of wages due workers at the time of separation from employment. *Conlon–Moore Corp. v. Cummins,* 28 Ill.App.2d 368, 373, 171 N.E.2d 676, 679 (1st Dist.1960). Commissions are considered wages. 820 ILCS 115/2. Defendant argues that it does not owe any commission to plaintiff regarding the Advantis sale and thus it did not violate the Collection Act. Plaintiff failed to address this issue in his reply to defendant's motion for summary judgment.

As stated above, plaintiff cannot support an argument that the Plan was a contract or that defendant owes him any commissions from the Advantis sale. Since plaintiff is not due any wages from defendant, he cannot make a claim under the Collection Act. Therefore, defendant's motion for summary judgment on Count II of plaintiff's complaint is granted.

## III. *Attorneys Fees in Wage Actions Act (Count III)*

■ Plaintiff's Count III asks for attorneys' fees pursuant to Illinois Attorneys Fees In Wage Actions Act (Attorneys Fees Act). 705 ILCS 225/1. The Attorneys Fees Act provides for the recovery of reasonable attorneys' fees in actions by employees seeking to obtain wages that are owed the employee once the employee obtains a decision by a court or jury that wages are indeed owed. *Id.* Plaintiff failed to address this issue in his reply to defendant's motion for summary judgment. As stated above, since plaintiff is not due any wages or commission from defendant he cannot support a claim for attorneys' fees under the Attorneys Fees Act. Accordingly, defendant's motion for summary judgment on Count III must be granted.

## CONCLUSION

Based on the above stated reasons, plaintiff's motion for summary judgment on Count I is DENIED and defendant's motion for summary judgment on all three counts of plaintiff's complaint is GRANTED. This case is dismissed in its entirety. All other pending motions are moot.